CONSOLIDATED STONE COMPANY, APPELLANT, V. UNION PACIFIC RAILROAD COMPANY ET AL., APPELLEES.

FILED JULY 11, 1914.   No. 17,763.

Mechanics' Liens: SUFFICIENCY OF EVIDENCE. In 1910, A, the owner of stone quarries in Indiana, furnished rough stone blocks to B, a dealer in cut stone at Galesburg, Illinois, who had contracted to supply cut stone to C, a building contractor who was erecting a building at Omaha. The rough stone shipped was piled in the yards of B at Galesburg, and the blocks were cut as required by the plans for different contracts. Stone from other quarries was also in the pile. No record was kept by A of the respective buildings in which the stone was to be used, although he had been informed it was to be used in the Omaha building. The purchase price was charged to B in a general running account which had run for several years; freight paid and other payments made by B were credited upon this run-

ning account. Part of the blocks furnished by A were cut and planed and used at other points than Omaha. There was some stone of this description in stock in the yard both before and after the Omaha contract was filled. The stone cut for use in the Omaha building was taken from the stock in the yard, and there is no definite proof that it was all furnished by A. A statement of account and affidavit for a lien upon the Omaha building was filed by A, which included shipments of stone to Galesburg prior to the Omaha sale, and other stone, as to which there is no definite proof that it ever reached the Omaha building. *Held*, That the statement of lien filed was not sufficiently definite and certain as to the stone which entered into the Omaha building, and that the facts in evidence are insufficient in law to establish a lien upon the building.

APPEAL from the district court for Douglas county: HOWARD KENNEDY, JUDGE. *Affirmed.*

*Greene, Breckenridge, Gurley & Woodrough* and *Montgomery, Hart & Smith,* for appellant.

*Mahoney & Kennedy, McGilton, Gaines & Smith, Edson Rich, A. G. Ellick* and *John A. Sheean, contra.*

LETTON, J.

In 1910 the Union Pacific Railroad Company had let the contract for the erection of an office building in Omaha to James Stewart & Company. The cut stone was furnished by Alexander King & Company, stone cutters of Galesburg, Illinois, under a contract with Stewart & Company. This action was brought to foreclose a lien claimed by plaintiff on account of stone furnished to Alexander King & Company to be used in the Union Pacific building. The petition alleges the facts as to ownership, the contract with James Stewart & Company; that Alexander King & Company had a contract with James Stewart & Company for the furnishing of stone to be used in the building; and that plaintiff furnished stone which was used by Stewart & Company. An itemized account of the stone claimed to be furnished is attached to the petition. Alexander King & Company answered with a general denial. Stewart & Company filed an answer containing a general denial, a plea that the affidavit was not filed within the statutory

time, that the account is largely in excess of any balance owing by King & Company to plaintiff, and fails to give credit for payments made. It further pleads that the stone mentioned in the account as delivered on September 15, 1910, and thenceforward to and including November 11, 1910, was under one contract, and that all stone sold and delivered from and after January 27, 1911, was sold and delivered under a separate and independent contract, and that the affidavit filed was false and untrue in several particulars.

The relevant and material facts as established by the evidence seem to be as follows: The plaintiff is the owner of quarries at Dark Hollow near Bedford, Indiana. Alexander King & Company are stone cutters, taking rough quarry stone and at their plant in Galesburg, Illinois, cutting, sawing or planing it ready for use in buildings, according to plans furnished. Alexander King & Company agreed to furnish the contractors a large quantity of blue Bedford stone. A sample from the quarries of plaintiff was submitted to the architect and was approved by him, and on September 10, 1910, Alexander King & Company ordered from the plaintiff 13,000 cubic feet of Dark Hollow blue Bedford stone, in large unscabbled blocks, to be shipped at the rate of a car-load a day to their plant at Galesburg, Illinois. Alexander King & Company maintained a stone-yard at the plant where rough stone blocks received from various quarries were usually kept in stock. These were piled up in one end of the yard. The blocks were taken to the gang saws as needed, where they were sawed into slabs and pieces, according to the dimensions of particular pieces required. Sometimes a block would be sawed into a number of pieces in order to use the stone economically, and these parts would be distributed to different jobs. Of the 13,000 cubic feet shipped to Galesburg under the order of September 10 about 1,200 cubic feet were used in a residence at Monmouth, Illinois, and over 2,900 cubic feet were used in a church building at David City, Nebraska. There is some evidence tending to prove that the stone supplied by the plaintiff was known

to the trade as Dark Hollow Bedford stone; that it was darker in color and closer in texture than other blue Bedford stone; that each block for this contract was marked; and that only the stone from plaintiff's quarry was used in the Union Pacific building. The shipping book of Alexander King & Company shows that 14,434.11 cubic feet of stone were shipped by that company to the building in Omaha. On the other hand, a number of witnesses testified for the defense that blue Bedford stone coming from the various quarries in that locality is of substantially the same quality and texture, although it all varies in shade. There is also evidence that blue Bedford stone from the plaintiff's and other quarries was in stock in the yards at the time the order of September 10 was given, and that the blocks were not specially marked, but were taken to the saws indiscriminately. It is also shown that stone was sold locally from the yard, and that at this time stone was being supplied to other buildings. The superintendent of construction for Stewart & Company testified that there are a few pieces of buff Bedford stone in the Union Pacific building, and that during construction he had complained several times to King & Company that the color of the stone was not uniform. It was also proved that a number of pieces of blue Bedford stone from other quarries of like color had been supplied by a local stone dealer in Omaha to supply omissions. From all the evidence we draw the conclusion that the blue Bedford stone supplied by the plaintiff was not so distinct in color and character from that of other quarries of that region, nor was it so marked, that it did not mingle with the mass of stone in the Galesburg yard, and that it is impossible to determine with certainty the origin of every stone supplied to Stewart & Company under this contract. No doubt the general bulk of the stone supplied came originally from the plaintiff's quarries, but it was a finished product that was shipped to Omaha, and not the rough stone sold by plaintiff. Having been merged in a mass at Galesburg and its identity not preserved either by segregation or distinctive marking, we cannot determine with any certainty—even

if a lien were granted by law under such a transaction as here presented—the amount of material furnished by the plaintiff. *Rinzel v. Stumpf,* 116 Wis. 287.

But there is another difficulty in the plaintiff's way. While in the orders given by King & Company to plaintiff it was mentioned that the stone was for the Union Pacific job, the purchaser exercised the right, with the tacit consent of the plaintiff, to use it in such other and different places as it deemed most to its advantage. As we have seen, part of the stone purchased was used in David City, Nebraska, part in Monmouth, Illinois, part in Omaha, and there is testimony that a small part of it was sold and delivered in Galesburg. King & Company had an open account with plaintiff running for several years back. The stone shipped was charged in this general account. No entry was made in any of plaintiff's books indicating the buildings in which the stone was to be used, and all payments made were credited upon this general account, and not upon special contracts. It seems clear that the stone was sold upon the general credit of Alexander King & Company and not to be used exclusively for the Union Pacific or any other building. Apparently the credit and financial standing of the buyer were such that no care was taken to identify and itemize the stone furnished for each separate structure. Under such a state of facts, no lien can be successfully claimed. Phillips, Mechanics' Liens (3d ed.) secs. 122-124; *Frost v. Falgetter,* 52 Neb. 692, and cases cited. And this applies with more force to persons most remote from the owner or principal contractor. Phillips, Mechanics' Liens (3d ed.) sec. 125.

The district court found that at the time of the commencement of the action King & Company were indebted to plaintiff in the sum of $5,074.40, being the balance of an open account; that the affidavit and account filed in the office of the register of deeds for the purpose of obtaining a lien was not a true or just account of the material furnished, but that a large amount of material furnished for other buildings was included, for which plaintiff was not entitled to a lien, which plaintiff well knew at the time

of filing, and by reason of the false and untrue statement of account the plaintiff was not entitled to a lien. The authorities seem to be uniform that, where a claimant, either by gross carelessness or by design, puts upon record a statement which he knows, or which by the exercise of reasonable and proper diligence he might have known, to be erroneous and unjust, either by including items not furnished for the particular building or by failure to give credit for payments made, the law will not aid him in enforcing his lien. On the other hand, if the errors are trifling and immaterial, or if they are readily explainable as the result of mistake, and no element of wilfulness appears, regard will be had for the imperfections of human machinery, and the recovery of a just debt will not be denied where nothing but fair dealing was intended.

We have some doubt, when the evidence of the plaintiff's bookkeeper as to how the erroneous statement came to be prepared is considered, whether the reasons assigned for the judgment of the district court are sound; but, even if unsound, the result reached is warranted by the evidence, and a proper judgment will not be reversed on account of an erroneous reason being given for its rendition.

The judgment of the district court is

AFFIRMED.

FAWCETT and SEDGWICK, JJ., not sitting.