WESTERN ELECTRIC COMPANY, Appellant, v. IOWA FALLS ELECTRIC COMPANY et al., Appellees.

MECHANICS' LIENS:     Right to Lien—Material Sold on General Credit. A materialman is not entitled to a mechanics' lien for goods sold to a contractor on the general credit of the latter, and not for any particular improvement.

*Appeal from Hamilton District Court.*—R. M. WRIGHT, Judge.

20

May 15, 1923.

Action in equity by plaintiff, a subcontractor and materialman, to establish and foreclose a mechanics' lien upon a high-tension electric transmission line, for materials furnished, and to secure the payment therefor out of the balance of the contract price which had not yet been paid over to the principal contractor, but which balance was claimed by intervener, Farmers State Bank, under an assignment of the contract between the electric company and the contractor. The trial court denied plaintiff's claim for the lien, and dismissed its petition. Plaintiff appeals.—*Affirmed.*

*Cutting, Moore & Sidley* and *Trewin, Simmons & Trewin,* for appellant.

*John A. Reed, Ralph Maclean, D. C. Chase, Jr., Lee & Garfield,* and *C. E. Gilchrist,* for appellees.

Preston, C. J.—The pleadings and evidence are voluminous. The printed record is nearly 600 pages. Summarizing the pleadings: It is alleged in the petition that the contract between the owner and the principal contractor, Kaul Construction Company, of which C. R. Kaul was the owner and manager, was in writing, and entered into on September 12, 1920; that plaintiff furnished the materials for which lien was claimed, at various dates from August to October, 1920, under and by virtue of an oral contract by the principal contractor, and at his special instance and request. The line to be constructed was known as the Blairsburg-Kamrar line. The amount claimed to be due, after deductions and credits, was approximately $5,000. The bill of particulars, or itemized statement of materials claimed to have been furnished, bears no dates on which the various items alleged to have been furnished were delivered. By amendment to petition to conform to the proof, it was stated that the materials were furnished from and including the months of February to October, 1920, rather than August to October.

The defendant Kaul made no contest; but Eby, as trustee in bankruptcy for Kaul and the construction company, with

other defendants, denied plaintiff's right to a lien; and the bank intervened.

The defenses urged by defendants and intervener may be summarized as follows: That, under the Iowa statute, a mechanics' lien could not be had upon an improvement of this character, constructed in the public highway, the electric company not being the owner of any land; that the materials were not furnished for this particular improvement, but upon the general credit of Kaul or the Kaul Construction Company; that, at the time the materials were alleged to have been furnished, there was no contract between the electric company and Kaul for the construction of said line, and that the greater part of materials were delivered to the contractor before the contract for the construction of the line was signed, September 12th; that the plaintiff failed to show that the materials out of which the line was constructed were the materials alleged to have been furnished by it to the construction company, or the dates upon which the materials were furnished; that the lien statement filed by plaintiff did not comply with the requirements of the statute; that the same is erroneous and excessive, and included nonlienable items; and that the errors were so reckless and gross as to defeat the whole lien. One or two other defenses were pleaded, which were stricken from the pleadings on plaintiff's motion.

Under the contract, the line was to be completed by January 1, 1921. The contract price was $8,000. It was constructed in substantial compliance with the contract, and was completed in November, except certain arresters, for which an allowance and adjustment were made. The contract provided that the line should be constructed according to certain specifications, along a right of way to be obtained by the owner from the Iowa Railway Commission, and in the highway.

We deem it unnecessary to discuss all the several different propositions involved, since, in our view of the matter, there is one controlling and decisive proposition, and that is that the weight of the evidence shows that the materials were furnished to the Kaul Construction Company upon the general credit of that concern, and not for this particular improvement. This

is a question largely of fact. To state the facts in detail would unduly prolong the opinion.

The first and only contract entered into between Kaul and the owner was executed on September 12, 1920. It is shown by the testimony that the Kaul people had commenced doing business with appellant about April, 1919, and had purchased a large amount of material prior to the purchase of the material in question. During the year 1920, and subsequent to April, 1919, the Kaul Company was engaged in the electrical business at Iowa Falls. Kaul constructed a number of electric lines on contract, and had done house wiring in connection with these lines. He also maintained a large warehouse at Iowa Falls, wherein electrical supplies and equipment were stored, and from which sales were made. He conducted a business of retailing these supplies and equipment. The account of appellant with the construction company shows that, in February, 1920, there was a balance due appellant for material furnished, of substantially $14,000. Kaul kept in his warehouse at Iowa Falls a stock of electrical material and equipment, which had been purchased from a number of concerns and at different prices and at different times, and had a pole yard, for the storage of poles. The larger part of said materials was purchased from plaintiff. The materials, or a considerable quantity thereof, for which lien was claimed, were shipped by appellant from Chicago to Iowa Falls, and were there mingled in Kaul's warehouse, with other materials of like character purchased elsewhere. The materials for which lien was claimed were shipped under a large number of different orders, as far back as December, 1919. A large quantity of materials was shipped in March, 1920. Appellant concedes in argument that approximately one half in amount and value of these materials was shipped prior to June, 1920. Appellant did not keep a record of the particular contract or job for which materials were furnished, nor of what materials were furnished on any contract. It kept but one account with the Kaul people, and that was a general account, which included each and all the materials which had ever been sold to Kaul, and for whatever purpose. Appellant is claiming a mechanics' lien in this case for materials, with some exceptions, which were actually used in the construction

of the transmission line for the Iowa Falls Electric Company, whether the materials were furnished by it or not. Kaul delivered to plaintiff trade acceptances covering his indebtedness to plaintiff, and whenever payments were received by plaintiff from Kaul, no attempt was made to credit the payments so received on any particular job. No inquiry was made as to the source of the money, but Kaul's general account was given credit.

Some of the foregoing matters are conceded and shown by the plaintiff's evidence. They are all established by the weight of the testimony. Appellant emphasizes the circumstances in regard to a conference between its credit man and Kaul in Chicago, about January, 1920. In the latter part of January, Kaul went to Chicago, and had a conference with plaintiff's credit manager, relative to placing orders for the coming year. Appellant emphasizes the importance of this conference and another conference between Kaul and plaintiff's assistant credit manager, about June 8, 1920. Appellant's claim for the evidence as to these two conferences is that, in the first one, a number of contracts were in prospect, for which materials would be needed, and that these were the matters discussed; that among these contracts was the line in question, which was being promoted early in 1920 by Kaul and the defendant electric company; that it was understood that, when the line had been successfully promoted, Kaul would get the contract for its construction. After the first conference, plaintiff's credit manager, Mr. Fredbloom, wrote a letter, which, it is claimed, embodied the substance of the agreement between them as to future credit. The letter stated, in substance, that credit was to be restricted to materials to be used in actual contracts for high-tension-line construction, and that it was the intention, as between plaintiff and Kaul, to preserve mechanics' lien rights as security. Mr. Trauscht, plaintiff's assistant credit manager, was advised of that letter. There is testimony that plaintiff relied upon Kaul's good faith in living up to the agreement; that no high-tension-line construction material was ever purchased from plaintiff by Kaul, except for construction of such lines; and that none was purchased to be sold at retail, or placed in general stock, though appellant concedes that some surplus material was sold in a

retail way. A general advance in values for such material seems to have been anticipated, and in March, 1920, Kaul ordered substantially $15,000 worth of high-tension-line material from plaintiff company, which order was accepted and filled. A part of the material was shipped before June, and a part after the conference and agreement of June 8th, which will be referred to in a moment. About May, plaintiff discovered that Kaul had a considerable supply of surplus material on hand at Iowa Falls, a part of which had been shipped on the March orders. As to the June arrangement, plaintiff claims that Kaul represented to Trauscht that he was now assured of the contract for the line in question; that he had the wire and some other material on hand at Iowa Falls, but required other material to complete the contract, and wanted to place an order for August shipment of enough additional material to build the line; that Trauscht consented to that arrangement, on condition that this was necessary, and enabled Kaul to incorporate the wire and other material into the line in question; that orders were accordingly placed and credit passed, relying on Kaul's statement; that, late in August and early in September, Kaul had failed to make payments as promised, and his credit was further restricted. Kaul and his company went into bankruptcy about February 7, 1921. In October, there was other correspondence between Kaul and plaintiff, in regard to shipping of material. In regard to the matters just mentioned, some other circumstances should be referred to, which tend quite strongly, we think, to show that plaintiff was furnishing materials on the general account of the contractor, without reference to a mechanics' lien, or to the contract between Kaul and the defendant electric company.

The $15,000 order for material in March, before referred to, was nearly six months before Kaul secured the contract for the line in question. That order was accepted and filled, notwithstanding a statement in Fredbloom's letter of February 11th, that "we shall be obliged to restrict your credit to the extent of shipping only such materials as are to be used on actual contracts." This letter did not refer to the contract in question, or to any particular contract. These materials were shipped out from time to time during the summer, and these

are the materials, or part of them at least, for which a lien is now claimed. These materials were shipped to Iowa Falls, and comprised substantially three times as much material as was needed in the line in question. As the material arrived at Iowa Falls, it was placed in the storeroom, where its identity was lost among other materials of the same kind; although appellant contends that they were able to identify some of it as having been used in the construction of the Blairsburg-Kamrar line. Kaul testifies:

"The line was built mostly from materials in stock in our warehouse at Iowa Falls. And that stock was composed of all the material we had received from every place, mingled together there, whatever material was shipped in. We purchased that stock—part of it—of different people, and had purchased it at various prices, from time to time. When I placed the order of March 23d, it was in the neighborhood of between $15,000 and $20,000. We placed the order of this size because we had several contracts under construction, and we were experiencing a great shortage of material, with slow delivery; and we talked it over with the men who were to become members of our organization, that it would be necessary to have some materials on hand for contracts that were closed, because we had a number of men working, and we had a great deal of trouble transferring men from one job to another, then back again, when the material did come in; and we figured on closing up new contracts, and wanted material there when they were closed. * * * In other words, that order was placed in anticipation of our future needs during that summer—that that came to Iowa Falls."

That order and the materials were charged to Kaul's account—an open account, and charged generally to Kaul, without mention of any particular job or contract. When Kaul made payments, they were credited to his general account, without referring to any particular contract. It is contended by appellees that the orders were accepted on the credit of Kaul, as a general contractor. Mr. Fredbloom testifies:

"I never realized that Kaul was insolvent. I thought he was financially good, and dealt with him all the time on the idea that he was financially good. The $15,000 order passed through my department after the January conference, without

my knowledge. I knew nothing about these transactions at the time these orders were placed. I communicated to Trauscht the understanding of February 11th. Trauscht had authority to pass the credit for these goods without my knowledge. His authority was equal with mine. He did not exceed his authority.''

Trauscht testifies:

''We received the contract on the Blairsburg-Kamrar line the latter part of September, I believe; it might have been early in October. * * * Mr. Kaul told me that Mr. Reed assured him that he would get the contract. I had confidence in his statement. I knew at that time there wasn't any contract. I furnished this material, knowing that he didn't have the agency yet. If we shipped material to Garner, I might say that, so far as the Garner job was concerned, it was intended for the Garner job. Our tickets would show that, and if shipped to Iowa Falls, we might, in some instances. I would say it might be fifty-fifty; that is just a guess. The ledger just showed a general account. I was at Iowa Falls a number of times while these materials were being furnished.''

This witness explained in detail the matters discussed at the conference. It is clear from the evidence, we think, that a number of prospective lines and extensions were discussed at that time, and that it was a general discussion of the business of the construction company, and was for the purpose of determining what material the construction company would be allowed to purchase, not for any particular line or contract, but to be used by it generally in carrying on its business for the year 1920. Kaul, as appellant's witness, so testified on cross-examination.

A witness for defendant electric company testifies that, at about the time of or shortly before the contract of September 12th, he went through the Kaul storerooms; went to Iowa Falls, to take Mr. Kaul's bids on the construction of the Blairsburg-Kamrar farm line; went through Kaul's two storerooms, to find out whether he had a sufficient quantity of material on hand at that time to do this particular piece of work, and found ample materials for the construction of this line. That was between the 5th and 10th of September, 1920. The following

day, he met Kaul at Webster City. At that time, there was no certainty, so far as witness knew, that Mr. Kaul would get the contract.

"Kaul asked me what we would offer for the work. . I told him we would offer him $8,000 for the completed job, and he said he would accept it. Afterwards, the written contract was entered into."

At the time of such conversation, the witness was foreman of the defendant electric company, and later became its general superintendent.

The different witnesses state in great detail, pro and con, the method of the construction of the line, the different materials, where the materials came from, and the like. We have stated herein more of the evidence than intended; but even so, it is but an outline of the mass of evidence introduced. At some points, we have stated our conclusions from the evidence. We deem it unnecessary to refer to the evidence further.

From our examination of the record, we cannot agree with appellant, where counsel state in argument that the evidence clearly establishes the fact that all the materials for which a lien is claimed were not sold on the general credit of the defendant Kaul. On the contrary, we are of opinion, and so find, that the weight of the evidence establishes that they were so sold, and that plaintiff did not sell the materials relying upon a mechanics' lien upon the property. This being so, plaintiff cannot enforce a mechanics' lien against the improvement, even though the improvement is such as that plaintiff would otherwise be entitled to the lien. The last proposition we have not discussed, and do not determine. If the appellant was deceived by Kaul, the defendant electric company was without fault. It is not shown that it knew of the alleged agreement between appellant and Kaul. What the plaintiff, as between it and Kaul, supposed, is not controlling. There seems to be but little dispute between counsel as to the law in regard to the phase of the case which we have discussed. As supporting our conclusion, see *Consolidated Stone Co. v. Union Pac. R. Co.*, 96 Neb. 521 (148 N. W. 318) (a case quite similar in its facts to the instant case); Phillips on Mechanics' Liens (3d Ed.), Sections 122, 123, 124; *Hobson Bros. v. Townsend*, 126 Iowa 453; *Poe v.*

*Ekert,* 102 Iowa 361; *Getty v. Tramel,* 67 Iowa 288.; *Des Moines Sav. Bank v. Goode,* 106 Iowa 568; *Sioux City F. & M. Co. v. Merten,* 174 Iowa 332, 347, 348; 27 Cyc. 49.

We have not discussed the question of the assignment to the Farmers State Bank. It is unnecessary to do so, because, if plaintiff is not entitled to a lien, it has no concern with what becomes of the money paid in on the contract. The plaintiff is the only party appealing.

Under the record, we have serious doubt whether plaintiff, because of the mingling of the property, and its claim against this defendant and other claims, and its failure to identify the property, has shown what part of the material alleged to have been furnished was used in constructing the line in question; also, whether plaintiff's statement for the lien was made in good faith. We deem it unnecessary to discuss these last propositions. Under the whole record, we think the trial court rightly dismissed the plaintiff's petition. The judgment is—*Affirmed.*

EVANS, ARTHUR, and FAVILLE, JJ., concur.