CENTRAL CONSTRUCTION COMPANY, A CORPORATION, APPELLEE, V. GUY E. HIGHSMITH ET AL., APPELLANTS.

50 N. W. 2d 817

Filed January 4, 1952. No. 33046.

W. A. *Ehlers,* for appellants.

*Fraser, Connolly, Crofoot & Wenstrand, R. G. Fraser,* and *Hird Stryker,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

SIMMONS, C. J.

This is an action for the foreclosure of a mechanic's lien. The matter was tried upon an amended petition and answer of the defendants Ehlers. From a decree generally favorable to the plaintiff, the defendants Ehlers and Mitchell appeal. We reverse the judgment of the trial court and remand the cause with directions.

The plaintiff is a construction company engaged in the remodeling of houses. The defendants Margaret C. Ehlers and William A. Ehlers are husband and wife. As will be set out later, certain deeds and instruments were made and delivered wherein Mrs. Ehlers was grantee and assignee. The record shows that Mr. Ehlers handled this entire transaction relating to him and his wife. For convenience these defendants will be referred to as the Ehlers, Mr. Ehlers, or Mrs. Ehlers as the fact appears. It further appears that defendants Mitchell are in possession of the property under a contract with the Ehlers. Where necessary the defendants Mitchell will be referred to herein as the Mitchells.

We are first confronted with a question as to issues. Toward the close of the trial a question arose as to whether or not the Mitchells were parties to the action and, if so, in default. Mr. Ehlers contended that he had an-

swered for the Mitchells. The trial court said: "* * * if the pleadings are not in proper form and their names are not in the heading, he may have leave to ammend (sic) his pleadings to conform to the proof." That occurred on November 2, 1950. On November 22, 1950, after the evidence had been all taken and the cause submitted to the court, Mr. Ehlers, as attorney for himself, Mrs. Ehlers, and the Mitchells filed an amended answer in which he made the Mitchells answering defendants. In this amended pleading he changed in several respects his answer as to the defenses of the Ehlers and also alleged that the plaintiff had sold and assigned its interest in the claim prior to the perfecting of the alleged mechanic's lien and that it had no lien. Plaintiff does not appear to have challenged this pleading. The transcript does not show the filing of a reply.

Appellants now contend that there being no reply denying or explaining affirmative allegations of defense, such allegations are admitted as true.

We discuss this contention no further than to point out that the rule is: "Where during the trial of a cause both parties treat an affirmative defense as denied, it will be so considered in this court, although the plaintiff filed no reply either before or after judgment." Crilly v. Ruyle, 87 Neb. 367, 127 N. W. 251. See, also, Hunter v. Weiner, 103 Neb. 538, 172 N. W. 521; In re Estate of Nilson, 126 Neb. 541, 253 N. W. 675.

The next contention is that plaintiff's petition does not state a cause of action against these appellants or any of them and that the trial court should have so found. It does not appear that the sufficiency of the petition was tested by demurrer or otherwise. The propositions advanced in support of this position are also advanced as to the sufficiency of the evidence to sustain a decree for the plaintiff. They will be determined in that connection.

The real property involved in this action is a lot with a house thereon in the city of Omaha. It is agreed that

as of August 1, 1946, the legal title to this property was in Wholesalers Adjustment Company, a corporation. On that date it entered into a contract to sell this property to one Guy E. Highsmith for $1,300, of which $500 was paid down and the balance of $800 with interest was to be paid in monthly installments of $15, beginning on September 1, 1946. Highsmith went into possession. On October 1, 1946, he paid $30; on November 1, 1946, he paid $15; on December 7, 1946, he paid $15; on March 8, 1947, he paid $20; and on April 15, 1947, he paid $30. On October 3, 1946, Highsmith executed a mortgage on this property to secure a promissory note for $280, payable in monthly installments of $20. The mortgagees were John L. and Juanita L. Bilby. This mortgage was recorded October 4, 1946. It does not appear what, if any, payments were made by Highsmith on the debt.

There is evidence that the Wholesalers Adjustment Company dissolved on or about January 18, 1947, and that one Howard became the holder of this property. The evidence is quite inconclusive on the matter. In the evidence plaintiff and defendants both treat the adjustment company as a going concern after that date. In June 1947, the insurance was paid and charged to the Highsmith account. On September 24, 1947, Howard paid the taxes. The trial court found that the adjustment company was a dissolved corporation. No assignments of error are made here as to that matter.

It also appears that in February 1947, the representative of Howard, using the name of Wholesalers Adjustment Company, began to ask, then to urge, then to demand, that the delinquent payments, the insurance, and the taxes be paid. As late as September 9, 1947, Highsmith was notified by letter that if settlement in full of the contract was not made within five days from the date of receipt of the letter the matter would be placed with an attorney to start action.

Mr. Ehlers testified that in November or December 1946, he was approached by a representative of the ad-

justment company with a proposition to buy this contract for Mrs. Ehlers and that "* * * I suggested that I would foreclose the contract for him if he so desired." All the evidence is that Highsmith was not then in default on the contract. He further testified that in December he agreed that "my wife would buy the contract." Mr. Ehlers offered in evidence a resolution of the board of directors of the adjustment company showing that on January 18, 1947, the officers had authorized conveyance of the property to Mrs. Ehlers, "Assignee of Guy E. Highsmith," for the consideration of $1,300. He further testified that on January 18, 1947, an assignment of the Highsmith contract was made to Mrs. Ehlers. This appears in the bill of exceptions as having been acknowledged before Mr. Ehlers as a notary public. It was recorded as of October 11, 1947. He also testified that on January 18, 1947, the Wholesalers Adjustment Company executed a warranty deed conveying this property to Mrs. Ehlers. It is acknowledged and recorded, as was the contract. It further appears by Mr. Ehlers' testimony that the deed was held by the representative of the adjustment company until early October 1947, when Mr. Ehlers paid Howard $769.70, the balance then due on the contract, including insurance and taxes, received the assignment and deed, among other things, and had them recorded. Prior to October 1947, the Ehlers had no interest in the property.

On October 11, 1947, Highsmith executed a quitclaim deed conveying this property to Mrs. Ehlers, the deed reciting that it was given to convey all right, title, and interest which the grantor had by virtue of the land contract. This deed was also recorded October 11, 1947. Mr. Ehlers testified that the consideration for this conveyance was $100, and that he secured this deed in order to avoid the necessity of a foreclosure proceeding.

On October 14, 1947, the Bilbys executed a release of the Highsmith mortgage. The release was recorded January 28, 1948. Mr. Ehlers testified that he paid for

the mortgage release, although the amount paid is not shown.

On January 16, 1947, Highsmith entered into a contract with plaintiff for the construction of a porch to the house for the recited consideration of $1,180, payable in monthly installments of $37.29. The contract provided that "FHA charge per year is to be added to above cost of labor and materials and is included in the monthly payments." Also on January 16, 1947, Highsmith made application to Universal C.I.T. Credit Corporation for a loan, the proceeds to be used for the above improvement.

Plaintiff entered upon the work covered by the contract. On March 28, 1947, Highsmith executed an "FHA Title I Borrower's Completion Certificate," and plaintiff an "FHA Title I Dealer's Completion Certificate." These certificates were on printer's forms directed to the Universal C.I.T. Credit Corporation. The mechanic's lien here involved was executed on April 25, 1947, and recorded May 29, 1947. Attached to the lien form was a copy of the contract with Highsmith. It recited that it was for work done and labor performed under a written contract for Highsmith, Wholesalers Adjustment Company, and the Bilbys; that when the contract was made the adjustment company was the owner, Highsmith was purchaser under contract, and the Bilbys claimed an interest by reason of a mortgage; that the first item was furnished January 16, 1947, and the date of the last item was April 18, 1947; that there was due the amount of $1,180; and that the plaintiff claimed a lien for that amount.

A witness testified that the actual work under the construction contract began on January 23, 1947. He testified from memory that the completion date was February 1 to 5, or February 10, and later checked his office records and said the completion date was March 28, 1947.

The evidence upon which the contention of a sale of the claim is based will be set out later herein.

The trial court found generally for the plaintiff, and held that plaintiff had a valid lien for the amount claimed against the interest of Highsmith in the property, and that it was entitled to a foreclosure of its lien. The court further found that the sum of the interest of defendants Ehlers in the property was $1,049.70. The court decreed that there was due defendants Ehlers the sum of $1,049.70; that there was due the plaintiff the sum of $1,180, together with interest at 6 percent from January 16, 1947; that in default of the payment of said sums with costs within 20 days, the property be sold as upon execution; and that the proceeds be applied: First, to the payment of defendants Ehlers' interest in the amount of $1,049.70; second, to the payment of costs; and, third, to the payment of the sum of $1,180, together with interest, to plaintiff, and the balance to be distributed to defendants as their interests appear.

The defendants here present a series of alleged errors in the findings and decree.

Defendants contend that Highsmith had no title which could become subject to any lien in favor of the plaintiff. This is based on a provision in the Highsmith contract which gave the adjustment company at its option the right to cancel the contract for failure to make monthly payments and the contention that the contract was in fact forfeited on January 1, 1947. There is and could be no contention here that the adjustment company or Howard ever forfeited or undertook to declare a cancellation of the contract. On the contrary, the evidence shows conclusively that they at all times treated the contract as in force, undertook to secure its performance, and accepted payments thereon. Not only that, but Mrs. Ehlers as assignee of Highsmith performed the contract, paid Howard the amount due under the contract, and secured performance of it. The assignment of error as to that question is devoid of merit.

The next assignment relates to the contention of the defendants that the trial court erred in holding that the defendants Ehlers were lienholders of the property and the companion contention of the Ehlers that in fact they were titleholders. With this contention we agree.

In Peterborough Savings Bank v. Pierce, 54 Neb. 712, 75 N. W. 20, we held:

"It is a general rule that where two unequal estates vest in the same person at the same time, without an intervening estate, the smaller is thereupon merged in the greater.

"But merger does not always or necessarily result from such a coinciding of such estates.

"Whether the two estates will be held to have coalesced will depend upon the facts and circumstances in the particular case, the then intention of the party acquiring the two estates, and the equities of the parties to be affected."

In various ways we have restated these rules down to and including Watson v. Dalton, 146 Neb. 86, 20 N. W. 2d 610.

In their answer defendants claimed title both by reason of the assignment of the Highsmith contract and the adjustment company deed, and also by the Highsmith deed. They prayed that the mechanic's lien be found null and void.

Mr. Ehlers testified that he agreed that Mrs. Ehlers would purchase the contract. The board resolution which he offered recited that Mrs. Ehlers was the assignee of Highsmith. Mr. Ehlers testified that he paid the amount due under the contract and obtained the adjustment company deed. By deed from Highsmith, Mrs. Ehlers secured whatever interest he had in this property and performed the Highsmith contract. A clear intention to merge the titles is shown. The equities all require that it be held that a merger of the adjustment company's legal title and Highsmith's equitable title occurred when Mrs. Ehlers acquired both estates. It fol-

lows that the trial court erred in decreeing the payment to the Ehlers of the $1,049.70 out of the proceeds of the sale.

Although a mechanic's lien when filed attaches only to an equitable estate, it may be enforced against the fee after the equitable and legal titles have merged. Harte v. Shukert, 94 Neb. 210, 142 N. W. 517. It further follows that the mechanic's lien, if valid, is a lien on the fee title shown to be held by Mrs. Ehlers.

This brings us to appellants' contention that under section 52-101, R. S. Supp., 1949, there is no lien except by virtue of a contract with the owner and that, they being the owners of the legal title and there being no contract with appellants, there is no liability on their part for the Highsmith debt. The lien claimed here is one based on a contract with Highsmith, the owner of an equitable interest in the property, which attached by merger, if valid, to the fee. The plaintiff here seeks to enforce a lien against the property. The plaintiff does not seek to make defendants liable for the debt. There is no merit in the contention.

This brings us to appellants' contention that the claimed lien is not valid. This is based on four contentions: (1) The statement of the names of the persons for whom the work was done was false in that it included not only Highsmith but also the adjustment company and the Bilbys with whom plaintiff had no contract; (2) the statement that the first item was furnished January 16, 1947, when the evidence shows that it was furnished January 23, 1947; (3) the statement that the date of the last item was that of April 18, 1947, when the initial evidence was some date early in February and finally March 28, 1947; and (4) the statement that there was due at the date of the claimed lien $1,180, when appellants claim the evidence shows that plaintiff had sold its claim, had received its money from the credit corporation, and had nothing due it on April 25,

1947, the date the lien was executed, or on May 29, 1947, the date the lien was recorded.

The rule is that "The object of the mechanics' lien law being to secure the claim of those who have contributed to the erection of a building, it should receive the most liberal construction to give full effect to its provisions." Way v. Cameron, 94 Neb. 708, 144 N. W. 172. See, also, Johnson v. Olson, 132 Neb. 778, 273 N. W. 201.

It is also the rule that "* * * where a claimant, either by gross carelessness or by design, puts upon record a statement which he knows, or which by the exercise of reasonable and proper diligence he might have known, to be erroneous and unjust, either by including items not furnished for the particular building or by failure to give credit for payments made, the law will not aid him in enforcing his lien. On the other hand, if the errors are trifling and immaterial, or if they are readily explainable as the result of mistake, and no element of wilfulness appears, regard will be had for the imperfections of human machinery, and the recovery of a just debt will not be denied where nothing but fair dealing was intended." Consolidated Stone Co. v. Union P. R. R. Co., 96 Neb. 521, 148 N. W. 318. See, also, Rivett Lumber & Coal Co. v. Linder, 113 Neb. 567, 204 N. W. 77.

We consider the first three of these four contentions together. We conclude that they are trifling and immaterial errors within the above rule and do not in anywise affect the validity of the lien.

This brings us to the fourth contention above stated. We direct attention to the provisions above recited from the Highsmith contract with plaintiff with reference to the FHA charges, to the credit application of Highsmith to the credit corporation, and to the completion certificate of Highsmith and the dealer's completion certificate on printed forms directed to the credit corporation. We direct attention also to the fact that there is no contention

here as to the amount originally due plaintiff from Highsmith under the contract, and no contention that Highsmith paid any part of it.

On direct examination, a witness for plaintiff was asked as to payments, if any, made on the Highsmith contract with plaintiff. He replied that "This contract was sold with" the investment trust and they "know more about it than I do." Later, in answer to a question as to the completion of the work, he testified that they received a completion certificate; that the completion certificate was necessary "to obtain money" from the investment trust and "we turn in our note and completion certificate and they pay us," and again "that the completion certificate cannot be sent in for a purchase until the work is completed"; and that "time has to elapse for approval by the finance company." On cross-examination, this witness testified that plaintiff "assigned this claim" and "got our money from the Commercial Credit" on March 28, 1947, and that plaintiff did not own "this property" on April 1, 1947. Later on redirect examination, this witness referred to a promissory note signed by Highsmith. It was marked as an exhibit and offered in evidence, but not received on Mr. Ehlers' objection that there was no connection shown between it and the mechanic's lien. The witness then testified that the note was "discounted." It was again offered in evidence and a ruling reserved. Later on cross-examination of another witness, the defendants developed that the note was for $1,356.75. Thereafter the offer of the note was withdrawn.

There also is evidence of plaintiff that the mechanic's lien was "assigned" to the credit corporation, and that it was "ultimately and eventually abandoned and assigned back." An instrument purporting to be the "assignment back" was offered in evidence. Ruling was reserved on the offer and, as nearly as we can determine, the instrument never was received in evidence. There is evidence that it was dated October 31, 1947. Accord-

ingly, the terms and provisions of the note and "assign-ment back" are not before us as evidence for considera-tion here.

It is apparent that this evidence got into the record as the initial result of the effort of the plaintiff to es-tablish the date of the completion of the work and the absence of payments under the contract. Loose language was used. With the exceptions stated, the written evi-dence that would show the facts was not produced.

It is as a result of this situation that the defendants Ehlers now undertake to defeat the lien on the con-tention that the plaintiff had sold its claim before the execution and recording of the mechanic's lien. We find no indication in the court's decree or in the motion for a new trial that this particular issue was urged to the trial court. The court did make a finding generally for the plaintiff and specifically found that the affidavit and the account filed as a mechanic's lien were correct and true.

This evidence indicates that the general plan was that Highsmith was to pay this debt through a loan from the credit corporation; that as a part of that plan a note was given; that plaintiff discounted or pledged the note to the credit corporation as a part of the financing of the transaction and received its money thereon; that the plan was not consummated; that plaintiff had not transferred its interest in the claim so as to lose its in-choate lien right but rather retained and exercised that right; and that as a part of that it assigned the perfected lien to the credit corporation and later secured a re-assignment of the lien. The evidence offered does not relate to the status of the claim on either the date of the execution or the recording of the mechanic's lien. The best evidence was in part not offered and when offered it was not received, but that which sustains these con-clusions rises as high as that upon which the Ehlers rely. It would be a patent injustice to defeat the en-forcement of this lien on this evidence and under the

circumstances appearing here. We agree with the conclusion of the trial court as to the validity of the lien.

The judgment of the trial court is reversed and the cause remanded with directions to enter a decree finding that there is due the plaintiff on the lien the sum of $1,180, with interest, and, if not paid, the property be sold as provided by law and the proceeds be applied: First, to the payment of costs; second, to the amount found due the plaintiff; and the balance, if any, to the defendants as their interests appear. All costs in both district court and this court are to be taxed to defendants Ehlers.

REVERSED AND REMANDED WITH DIRECTIONS.