JAMES B. FRANKSEN, DOING BUSINESS AS J.B. FRANKSEN &
ASSOCIATES, APPELLANT, V. CROSSROADS JOINT VENTURE ET AL.,
APPELLEES.

515 N.W.2d 794

Filed May 13, 1994.    No. S-92-579.

Martin P. Pelster and, on brief, David J. Lanphier, of Croker, Huck, Kasher, Lanphier, DeWitt & Anderson, P.C., for appellant.

Patrick B. Griffin and Shentell L. Auffart, of Kutak Rock, for appellee Crossroads Joint Venture.

D.C. Bradford and C. Gregg Larson, of Bradford, Coenen, Ashford & Welsh, for appellee Timothy Hawbaker.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, FAHRNBRUCH, and WRIGHT, JJ.

HASTINGS, C.J.

This is an action to foreclose a construction lien on property located on what is commonly known as the Crossroads Mall in Omaha. The motion for summary judgment filed by plaintiff James B. Franksen was overruled; cross-motions for summary judgment filed by defendants Crossroads Joint Venture (CJV) and Timothy Hawbaker were sustained. Franksen appeals, asserting that the district court erred in (1) determining that he did not contract with a party (or an agent thereof) having an interest in the property, (2) sustaining the motions for summary judgment filed by defendants CJV and Hawbaker, (3) overruling his motion for summary judgment, and (4) overruling his motion for new trial.

In appellate review of a summary judgment, the court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Hawkins Constr. Co. v. Reiman Corp., ante* p. 131, 511 N.W.2d 113 (1994); *Healy v. Langdon, ante* p. 1, 511 N.W.2d 498 (1994).

Summary judgment is to be granted only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Hawkins Constr. Co. v. Reiman Corp., supra; Healy v. Langdon, supra.*

An action to foreclose a construction lien is one grounded in equity. *Hulinsky v. Parriott,* 232 Neb. 670, 441 N.W.2d 883 (1989). In an appeal of an equity action, an appellate court tries factual questions de novo on the record and reaches a

conclusion independent of the findings of the trial court. *Id.*; *Hughes v. Enterprise Irrigation Dist.*, 226 Neb. 230, 410 N.W.2d 494 (1987).

Sometime in January 1990, Hawbaker contacted a representative of CJV regarding the leasing from CJV of space in the Crossroads Mall in which to operate a restaurant. Negotiations between Hawbaker and Dale Kline, lease coordinator for CJV, continued during the months of March and April 1990, at which time the various provisions of a written lease later executed by Hawbaker and CJV were discussed.

In April 1990, Franksen was contacted by Hawbaker and asked if he would be interested in becoming involved with the construction of a restaurant, later to be known as the Graffiti Eatery, located at the Crossroads Mall. Franksen later undertook the construction of that project. Although he testified that he would not call himself the "general contractor" of the project, Franksen did engage the subcontractors and was responsible for project design and construction coordination. The written terms of the agreement were contained in correspondence between Hawbaker as president of defendant Hawbaker & Associates, Inc., and Franksen as president of J.B. Franksen & Associates. The letter of June 15, 1990, from Hawbaker & Associates addressed to Franksen & Associates confirmed the employment of Franksen and set forth the terms of that employment, including the architectural design, the hiring and managing of all construction crews, and the payment of costs plus 10 percent, as well as provisions for a completion bonus and a budget bonus. Franksen & Associates in letters of June 18 and July 30 addressed to Hawbaker & Associates accepted the terms of the proposal with some slight modifications. During the course of the summer of 1990, there were telephone conversations between Hawbaker and Kline. Hawbaker testified that there were times he had to put Franksen on the phone inquiring why blueprints had not been approved by CJV.

When construction of the project commenced on September 27, 1990, Franksen was aware that Hawbaker & Associates had not yet signed a lease with the property owner, CJV. A written

lease was entered into between Graffiti Eatery, Inc., and CJV covering the premises, the various agreements as to construction required of the tenant, the monthly rentals, and so forth. Although the lease was dated October 23, Hawbaker testified that he thought it must have been executed by CJV on December 21, because that was the date on a letter from CJV enclosing the executed lease. Franksen testified that he went all the way through construction without knowing of the entity Graffiti Eatery or that a lease had been executed.

The lease also provided that when all construction work required of the tenant had been completed, all costs had been paid in full, and satisfactory evidence of the attachment of no liens had been furnished, CJV would "pay to Tenant as Landlord's contribution, if any, for Tenant's Work the sum of $112,000.00 [deletion] and no more." The lease goes on to provide: "In addition, Landlord shall contribute to Tenant the sum of One Hundred Thousand and 00/100 Dollars ($100,000), (herein referred to as 'Tenant Finish Allowance')." This payment was in consideration of the tenant's paying additional rental as defined in the lease agreement and conforming to certain other provisions, notably the satisfactory completion of the construction and payment in full of all construction costs. Finally, there was a provision that the "Tenant may retain, as Landlord's Contribution to Tenant's Work, fifty percent (50%) of the Minimum Rent otherwise payable to Landlord, until such time as the total sum retained equals $28,000.00."

Franksen testified that no representative of Simon Development, the mall management company, or CJV told him that they were contributing money to the project. None of the employees of CJV to whom Franksen talked ever told him that Hawbaker had any authority to act on behalf of CJV, nor did Hawbaker make any inquiry in this regard. However, Franksen stated that as of July 30, 1990, he believed that Hawbaker was acting on behalf of CJV because Hawbaker said that CJV was putting up some financing.

As previously stated, Graffiti Eatery eventually entered into a lease with CJV covering the particular premises. Simon Development was aware that construction had begun prior to execution of the lease.

Hawbaker was the sole incorporator of both Hawbaker & Associates and Graffiti Eatery. Hawbaker testified that when he first contacted CJV in January 1990 regarding the leasing of the space for restaurant purposes, he was acting in a corporate capacity for Hawbaker & Associates and that he did not plan to incorporate under a different name. In answer to a question as to when it was decided to incorporate under Graffiti Eatery, Hawbaker stated that it was only after "all financing had fallen out," in October 1990, that Hawbaker & Associates backed out of the project and Graffiti Eatery had to "start afresh and do it on their own." However, the record contains a letter from Hawbaker & Associates to Simon Development, dated June 15, 1990, stating that Graffiti Eatery would be the tenant and that Graffiti Eatery had hired Franksen as project designer and construction coordinator. The record also reflects that a letter dated June 15, 1990, was sent from Hawbaker & Associates to Franksen, confirming Franksen's employment in the "GRAFFITI EATERY" project; however, Franksen testified that he was not aware of Graffiti Eatery as an "entity" until the project was completed.

On October 2, 1990, Hawbaker issued a check to Franksen for payment of services provided on the construction project. When Franksen attempted to negotiate the check, he found that a stop-payment order had been issued by Hawbaker, who informed Franksen that the account on which the check was drawn contained insufficient funds. Franksen later, on November 7, spoke with Rob Morse, variously referred to in the record as Morse and Morris, an employee of Simon Development, in regard to his concerns about Hawbaker, including the fact that Hawbaker's checks were no good and that Hawbaker had been trying to get Franksen to squeeze false lien waivers out of the subcontractors. During this conversation, Morse called someone named "Jim," and after hanging up, told Franksen that "Simon will pay you guys off, and we'll throw his ass out." Franksen testified that he did not think about whether Morse had the authority to bind CJV to the payment of his costs. However, he also stated that after this meeting, he believed that Simon Development would "do the right thing." Franksen spoke to Morse again the following day,

and Morse told him to finish the job. Franksen stated that after November 8, he believed that Simon Development or CJV would be responsible to him and to his subcontractors for the payment of fees and expenses. When asked about completing the work, Franksen said, "[T]here was very little I could do to stop the job."

Construction was completed on November 23, 1990, and the Graffiti Eatery restaurant opened on November 25. On December 6, Franksen filed a notice of commencement with the Douglas County register of deeds. Copies of the notice of commencement were sent to John Milam, Kline, and Jim Prysiazny, of Melvin Simon & Associates; to Graffiti Eatery; and to Hawbaker & Associates. On December 19, Mark Reed, tenant coordinator of CJV, sent a letter to Franksen which stated that they were preparing to disburse funds for construction of the restaurant and that lien waivers would be required. Reed testified by affidavit that when the letter was written, it was not his belief that CJV was under any obligation to pay funds directly to the contractors. However, while the lease provided that CJV was obligated only to release funds to Graffiti Eatery, CJV was willing to disburse the "Landlord's Contribution Toward Tenant's Work" and loan funds jointly to Graffiti Eatery and the contractors in order to resolve the contractors' claims. The disbursement was conditioned upon CJV's being provided with final lien waivers, but the condition was not met.

On June 4, 1991, Graffiti Eatery was served with a notice of termination of lease for violating the terms of the lease, including the failure to pay rent when and as due. Graffiti Eatery vacated its leased space on October 31, pursuant to court order, owing CJV rent in excess of $59,000. Crossroads Mall manager Curt Fickeisen testified by affidavit dated March 27, 1992, that since Graffiti Eatery vacated, Crossroads had been unable to lease the space, and it remained vacant.

As a result of not receiving payment for the construction expenses, Franksen filed a construction lien on the property on January 22, 1991. An amended petition for foreclosure of the construction lien was filed on July 9. Motions for summary judgment were filed by Franksen, CJV, and Hawbaker. In

sustaining the motions of CJV and Hawbaker, the district court found that the construction contract was between Franksen and Hawbaker & Associates and that there was no competent evidence to show that Graffiti Eatery was acting as an agent for CJV or that Hawbaker & Associates was acting as an agent for Graffiti Eatery; therefore, the construction lien could not attach to the leasehold estate. The court further found that when the leasehold estate of Graffiti Eatery was terminated by CJV, there was no agency relationship between Graffiti Eatery and CJV which would create an implied or actual contract necessary to bind the estate of the fee title holder as the "contracting owner."

Although Franksen assigns as error that the district court erred in sustaining Hawbaker's motion for summary judgment, this assignment of error was not discussed in the brief. Ordinarily, to be considered by an appellate court, errors must be assigned and discussed in the brief of the one claiming that prejudicial error has occurred. *State v. Vermuele*, 241 Neb. 923, 492 N.W.2d 24 (1992). We therefore turn to the assignments of error as they relate to CJV.

The creation, enforcement, and foreclosure of construction liens is governed by the Nebraska Construction Lien Act, Neb. Rev. Stat. § 52-125 et seq. (Reissue 1988). A person who furnishes services or materials pursuant to a real estate improvement contract has a construction lien, to the extent provided in the act, to secure the payment of his or her contract price. § 52-131(1). If at the time a construction lien is recorded there is a recorded notice of commencement covering the improvement pursuant to which the lien arises, the lien is on the contracting owner's real estate described in the notice of commencement. § 52-133(1). Contracting owner shall mean a person who owns real estate and who, personally or through an agent, enters into a contract, express or implied, for the improvement of the real estate. § 52-127(3).

Franksen first contends that he contracted with an agent of CJV to construct the improvements in question. Although he testified that he thought Hawbaker was being backed up by CJV and argues that he was not made aware of Hawbaker's lack of authority to bind CJV's interest in the property until well

after construction commenced, his own testimony indicates that he was aware that no lease had been signed, that he did not go to CJV for payment, and that he did not know if anyone he spoke to had authority to bind CJV, although he expected CJV "to do the right thing." After construction had commenced, Franksen received a copy of a letter sent from an attorney for Simon Development to Hawbaker, dated October 9, 1990, which granted permission to the tenant to commence construction and provided that the tenant agreed "to accept full responsibility for said construction."

An agency is a fiduciary relationship, resulting from one person's manifested consent that another may act on behalf and subject to the control of the person manifesting such consent, and, further, resulting from another's consent to so act. *Gottsch v. Bank of Stapleton*, 235 Neb. 816, 458 N.W.2d 443 (1990); *Dunn v. Hemberger*, 230 Neb. 171, 430 N.W.2d 516 (1988).

Whether an agency exists depends on the facts underlying the relationship of the parties irrespective of the words or terminology used by the parties to characterize or describe their relationship. *Delicious Foods Co. v. Millard Warehouse*, 244 Neb. 449, 507 N.W.2d 631 (1993); *Gottsch v. Bank of Stapleton, supra*.

Apparent or ostensible authority to act as an agent may be conferred if the alleged principal affirmatively, intentionally, or by lack of ordinary care causes third persons to act upon the apparent authority. *Corman v. Musselman*, 232 Neb. 159, 439 N.W.2d 781 (1989); *Western Fertilizer v. BRG*, 228 Neb. 776, 424 N.W.2d 588 (1988). However, the apparent authority or agency for which a principal may be liable must be traceable to the principal and cannot be established by the acts, declaration, or conduct of the agent. *Corman v. Musselman, supra*; *Pioneer Animal Clinic v. Garry*, 231 Neb. 349, 436 N.W.2d 184 (1989).

Apparent or ostensible authority is the power which enables a person to affect the legal relationships of another with third persons, professedly as agent for the other, from and in accordance with the other's manifestations to such third persons. *Corman v. Musselman, supra*; *Western Fertilizer v. BRG, supra*.

One who is placed on inquiry as to an agent's or employee's

authority, and who has reasonable means of making inquiry, occupies the same position in law as if he had actual knowledge of the employee's lack of authority, because he is charged with knowledge of the facts which the inquiry would have developed. *American Surety Co. v. Smith, Landeryou & Co.,* 141 Neb. 719, 4 N.W.2d 889 (1942).

The record indicates that Franksen was at least placed on inquiry as to Hawbaker's authority to bind CJV to construction costs. However, while the record is inconclusive as to whether Graffiti Eatery was actually an entity as of October 9, 1990, it does clearly establish that there was no lease with Graffiti Eatery or Hawbaker & Associates as of that date. Yet in a letter addressed to Graffiti Eatery, to the attention of Hawbaker, CJV granted its "tenant" permission to commence construction as of that date. Franksen received a copy of this letter after construction had begun. Thus, while aware that there was no lease, and thus no tenant, Franksen also knew that CJV agreed to allow construction to take place on its property—construction which Hawbaker & Associates had contracted for with Franksen. A party who has knowingly permitted others to treat one as her or his agent is estopped from denying the agency. *Corman v. Musselman, supra; Western Fertilizer v. BRG, supra.* However, going back to the November 7 conference with Morse, Franksen testified in his deposition that Morse never told him that CJV would be responsible and pay Franksen's fees and those of the subcontractors, that Morse never told him that Hawbaker was acting on behalf of CJV, and that Morse did tell him that "Simon will pay you guys off." Under the circumstances as outlined above, there can be no dispute that Hawbaker was not acting as an agent in fact for CJV.

As an alternative theory of recovery, Franksen asserts that the equitable doctrine of merger dictates that the termination of the leasehold estate caused the leasehold estate and the attached construction lien to merge into the fee simple estate, thereby making the construction lien enforceable against CJV's interest in the property.

The general rule is that where two unequal estates vest in the same person at the same time without an intervening estate, the

smaller is thereupon merged in the greater. *Waite Lumber Co., Inc. v. Masid Bros., Inc.*, 189 Neb. 10, 200 N.W.2d 119 (1972); *Central Construction Co. v. Highsmith*, 155 Neb. 113, 50 N.W.2d 817 (1952).

But in equity the common law legal rule as to merger is not always followed, and the doctrine of merger is not favored. Equity will prevent or permit a merger as will best subserve the purposes of justice and the actual and just intent of the parties, whether express or implied. *Waite Lumber Co., Inc. v. Masid Bros., Inc., supra*; *American Savings & Loan Ass'n v. Barry*, 123 Neb. 523, 243 N.W. 628 (1932).

Although a mechanic's lien when filed attaches only to an equitable estate, it may be enforced against the fee after the equitable and legal titles have merged. *Waite Lumber Co., Inc. v. Masid Bros., Inc., supra*; *Central Construction Co. v. Highsmith, supra*.

In *Harte v. Shukert*, 94 Neb. 210, 142 N.W. 517 (1913), the landlord failed to declare a forfeiture of a long-term lease for nonpayment of monthly rentals while the tenant, with the landlord's consent, made permanent improvements on the property at a cost in excess of $70,000. When work on the improvements ceased, the landlord attempted to declare a forfeiture of the lease and to take possession of the improvements as his own. We found that there were two estates, the fee and the leasehold; that they had not been kept separate; and that for the purposes of the lien, the leasehold had merged in the fee.

In *Waite Lumber Co., Inc. v. Masid Bros., Inc., supra*, the landlord, Masid, and tenant, Verges, agreed in the lease to make improvements to the open area of a building so that it could be used as a restaurant and lounge. We found that the improvements required of the tenant were substantial, indicating that they would not have been made except in contemplation of their use during the 10-year term plus 5-year option to renew fixed by the lease. Construction began in November 1969 and was completed in early March 1970. Verges made the required rent payment in November and December 1969, but none thereafter, and was therefore in default during most of the construction period. However, Masid never

exercised the option to forfeit or cancel the lease, but allowed the material and labor suppliers to finish the construction. After Verges suddenly abandoned the premises, Masid took possession, made improvements, and leased the property to another tenant, Copper Kettle, Inc., less than 6 months later. We stated:

> [A] merger that would make Masid liable for Gray's lien will occur only if equity and good conscience so dictate.
>
> That such a merger should result here becomes evident when we examine the position of the parties at the time Masid relet to Copper Kettle, Inc. It now owned a building, half of which had been completely changed into a restaurant and lounge, at a cost of nearly $20,000, of which Masid paid nothing and Verges paid over $8,000, notwithstanding the lease called for a significant portion of the improvement to be made by Masid. . . .
>
> To allow Masid to so enrich itself at the expense of Gray, and the other lienholders, would produce an unconscionable result, which equity will not permit.

*Id.* at 19-20, 200 N.W.2d at 125.

Relying on *Harte v. Shukert, supra,* CJV contends that in order for Franksen to prevail on his theory of equitable merger, Franksen must establish (1) that CJV is equitably estopped from asserting that the lease was terminated and (2) that the leasehold may be equitably merged into the fee. CJV also asserts that implicit in *Harte* is the ruling in *Stevens v. Burnham,* 62 Neb. 672, 87 N.W. 546 (1901), that, absent estoppel, where a mechanic's lien attaches only to the leasehold estate, termination of the leasehold terminates the lien attached thereto.

Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed, either of property, of contract, or of remedy, as against another person who in good faith relied upon such conduct and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right either of property, of contract, or of remedy. *Stratman v. Hagen,* 221 Neb. 157, 376 N.W.2d 3 (1985); *DeBoer v.*

*Oakbrook Home Assn.*, 218 Neb. 813, 359 N.W.2d 768 (1984).

Equitable estoppel rests largely on the facts and circumstances of the particular case and will be applied where the wisdom and justice of the principle are founded upon equity, morality, and justice in accordance with good conscience, honesty, and reason. Under such circumstances, the doctrine subserves its true purpose as a practical, fair, and necessary rule of law. *Muller v. Thaut*, 230 Neb. 244, 430 N.W.2d 884 (1988); *Koop v. City of Omaha*, 173 Neb. 633, 114 N.W.2d 380 (1962).

In both *Harte v. Shukert*, 94 Neb. 210, 142 N.W. 517 (1913), and *Waite Lumber Co., Inc. v. Masid Bros., Inc.*, 189 Neb. 10, 200 N.W.2d 119 (1972), the landlord allowed construction to continue while the tenants were in default for nonpayment of rent. In the instant case, the construction was commenced before Graffiti Eatery executed the lease and was completed 2 days before the restaurant opened. While default for nonpayment of rent is apparently not at issue here, other pertinent facts include: (1) Mall representatives were in contact with Franksen on a regular basis during the course of construction, and plans and specifications were approved by, and coordinated with, Simon Development; (2) the lease stated that CJV would provide $112,000 as landlord's contribution to tenant's work, provide a loan of $100,000 as a "Tenant Finish Allowance," and permitted the tenant to retain $28,000 from the minimum rent due for the landlord's contribution toward tenant's work; (3) Hawbaker stopped payment on checks to Franksen beginning in early October 1990, and mall representatives were made aware of that fact, perhaps before Hawbaker executed the lease on October 23, but certainly before the lease was signed by Herb Simon, apparently on or about December 21; (4) although aware that Hawbaker was experiencing financial difficulties, a mall representative told Franksen to complete construction and "Simon will pay you guys off"; (5) although CJV asserted in its brief and at oral argument that it had waived the $300,000 letter of credit required of the tenant in favor of the landlord prior to commencement of tenant's work, in response to plaintiff's interrogatory number 19, CJV responded that the letter of

credit was not waived, but instead was never issued; and (6) Simon Development sent a letter to Franksen on December 19 which stated that it was preparing to disburse funds for the construction although Graffiti Eatery had been open for business for nearly 1 month, and according to Hawbaker, the lease had not yet been executed by Simon; and (7) CJV did execute the lease knowing that construction costs had not been fully paid.

The record indicates that $399,090.78 in construction costs have not been paid. While CJV contends that it has not benefited from the improvements, the record is insufficient to make that determination.

In determining whether a merger has taken place, the court will consider the circumstances of the particular case in the light of equity and good conscience. *Waite Lumber Co., Inc. v. Masid Bros., Inc., supra*; *American Savings & Loan Ass'n v. Barry*, 123 Neb. 523, 243 N.W. 628 (1932).

Viewed in a light most favorable to Franksen, the items delineated above raise genuine issues of material fact or as to the ultimate inferences that may be drawn from the facts relating to whether CJV, considering principles of justice, equity, good conscience, honesty, and reason, should be estopped from denying the effect of its conduct when in the absence of a tenant and with knowledge of Hawbaker's financial difficulties, it permitted or encouraged Franksen to make valuable improvements on its property and accepted the benefits of those improvements, claiming there was no corresponding liability.

Whether or to what extent the improvements *actually* enhanced the value of the premises is also a disputed question of fact which must be resolved by the trial court.

Accordingly, the judgment of the district court in granting summary judgment in favor of CJV and in denying summary judgment to Franksen & Associates is reversed, and the cause is remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.

LANPHIER, J., not participating.