JAMES F. SHEEHY, APPELLANT, v. HUGH FULTON ET AL., APPELLEES.

FILED JANUARY 3, 1894.   No. 5260.

</div>

1. **Mechanics' Liens:** VENDORS' LIENS: PRIORITIES.   The vendor in an executory contract for the sale of land subjects his estate in the property to a mechanic's lien for improvements

erected thereon by the vendee where his agreement with the vendee is of such character as to require the construction of the building and to constitute the vendee his agent in such construction.

2. **Persons claiming mechanics' liens** are not in such cases restricted by the terms of the written contract of sale, but may, by parol evidence, establish the true terms of the contract.

3. **Statute of Frauds: MEMORANDUM. WHERE A VERBAL PROMISE** is made, upon sufficient consideration, to answer for the debt of another, and subsequently a memorandum is executed sufficient to answer the requirements of the statute of frauds, such promise may be enforced, although no new consideration passes upon the execution of the written memorandum.

APPEAL from the district court of Lancaster county. Heard below before FIELD, J.

The opinion contains a statement of the case.

*Marquett, Deweese & Hall,* for appellant:

The plaintiff is entitled to a prior lien for the balance of his purchase money under and by virtue of the terms of the contract of sale. (*Neil v. McKinney,* 11 O. St., 58; *Zeigler, Baker & Co.'s Appeal,* 69 Pa. St., 471; *Logan v. Taylor,* 20 Ia., 297; *Wilkerson v. Rust,* 57 Ind., 172; *Bohn Mfg. Co. v. Kountze,* 30 Neb., 719; *Henderson v. Connelly,* 123 Ill., 98; *Hickox v. Greenwood,* 94 Ill., 266.)

No attempt is made to reform the contract. The evidence admitted attempting to show there was a verbal agreement that a building should be erected was incompetent. (*Bast v. First Nat. Bank of Ashland,* 101 U. S., 93; *Martin v. Berens,* 67 Pa. St., 459; *Barnhart v. Riddle,* 29 Pa. St., 96; 1 Greenleaf, Evidence, sec. 275; *First Nat. Bank of St. Paul v. Nat. Marine Bank of St. Paul,* 20 Minn., 63.)

*F. A. Boehmer* and *W. A. Williams,* for appellee Sterling P. Smith *et al.*:

The decree of the court below giving the mechanics

prior liens is correct. (*Bohn Mfg. Co. v. Kountze,* 30 Neb., 719; *Henderson v. Connelly,* 123 Ill., 98; *Hill v. Gill,* 42 N. W. Rep. [Minn.], 294; 2 Jones, Liens, secs. 1255, 1256, and cases cited.)

*Talbot & Bryan* and *T. S. Allen,* for appellee Pomeroy Coal Company:

The promise of plaintiff to pay for materials was an original promise and not within the statute of frauds. (*Waters v. Shafer,* 25 Neb., 225; *Lindsey v. Heaton,* 27 Neb., 668.)

*Stevens, Love, Cochran & Teeters,* for other appellees.

IRVINE, C.

Upon September 25, 1890, the plaintiff contracted to sell a lot in the city of Lincoln to the defendant Fulton, $5 of the purchase price being paid in cash, and the remainder, $3,495, to be paid November 1, 1890. The construction of a building upon the lot was begun by Fulton a few days after the execution of this contract. This suit was brought by the plaintiff to foreclose his lien for the purchase money. A number of defendants set up mechanics' liens growing out of the performance of labor and furnishing of material for the building. The decree of the district court established these liens as prior to the plaintiff's lien for the unpaid purchase money. The principal controversy is as to the propriety of the decree in so subordinating the vendor's lien to the mechanics' liens. The mechanics' lienors, to support the decree, rely upon the doctrine of *Bohn Mfg. Co. v. Kountze,* 30 Neb., 719. The plaintiff contends, first, that no agreement charging the owner of the fee appears in the written contract of sale, and that parol evidence was inadmissible to establish such agreement; second, that the evidence admitted was insufficient to show such an agreement.

As to the first contention, it is to be observed that the controversy here is not between the parties to the written contract. The lienors, being strangers to that contract, are not bound by the terms of the writing; but they are at liberty to enforce the real understanding and contract between the parties, the question being not whether there was an agreement between the vendor and vendee capable of enforcement between them, but whether the vendor by his acts had constituted himself a principal in the construction of the building and so charged his estate in the land.

As a preliminary to a consideration of the other branch of the question, that is, the sufficiency of the evidence to bring the case within the rule of *Bohn Mfg. Co. v. Kountze*, we think it is proper to say that in some instances that rule seems to have been misunderstood. An impression seems to have been created that the general effect of *Bohn Mfg. Co. v. Kountze*, 30 Neb., 719, and *Millsap v. Ball*, 30 Neb., 728, was to charge the vendor's estate in every case where by the nature of his contract or otherwise he has knowingly permitted the erection of a building by the vendee upon the land sold. A proper understanding of these cases leads to no such conclusion. The true rule is well stated in the case of *Pickens v. Plattsmouth Investment Co.*, 37 Neb., 272, as follows: "By this it was not held that where the owner of the land sells it and simply takes back a mortgage for the purchase price without in any way becoming a party to a contract for the erection of improvements, that one who furnishes materials or labor upon a contract with the vendee alone can assert thereon a lien superior to that of the said mortgage duly recorded. Quite to the contrary it has been recently held by this court in *Henry & Coatsworth Co. v. Fisherdick*, 37 Neb., 207, where one furnished money to build a house for which he took a mortgage upon the premises whereon the erection was to be made, that the record of such mortgage gave a priority to the rights of material-men and mechanics who began to con-

fer. value upon the mortgaged property after the record of the mortgage. To subject a vendor's rights in the subject-matter of the sale to the claim of a mechanic's lienor, it must appear, that, with respect to the value conferred by the labor or material of such lienor, there was a privity of contract through the vendee between the vendor and such lienor. This privity will not be implied from the mere fact that the mechanic's lienor, upon the faith of a contract between himself and such vendee, furnished labor or material. It must be established by the proofs, or as fairly inferable from the facts as any other independent fact or proposition." The real question in this case, then, was whether or not such a privity had been established here between lienor and vendor under the rule as above stated. Upon this point there was evidence tending to show that when the contract of sale was made it was understood between the parties that the building should be erected; that the purchase price of the land was to be paid out of the proceeds of a loan which had been negotiated or which it was understood could be made upon the security of the property, but that the loan could not be consummated until the excavations of the building were made and the foundations were in. It was for these reasons that a nominal payment of $5 was accepted, and that the whole of the remainder of the purchase money was to be paid November 1, it being understood that at that time the building should have advanced far enough to permit the consummation of the loan. There was also evidence tending to show that the vendor endeavored to have the vendee substitute other contractors for those who were performing the work because the latter were proceeding so slowly that a completion of the transaction could not be had within the stipulated time. There was also some evidence tending to show that the vendor exercised some control or direction over the building operations, but this evidence is of an uncertain character and leaves it very doubtful as to whether the vendor intended

more in these matters than to prevent the vendee from en-
croaching upon other land of the vendor and to advise the
vendee in some particulars. Such evidence is, therefore,
of very little weight; but the evidence already adverted to,
if believed, would lead to the conclusion that the transac-
tion was a joint arrangement between vendor and vendee
whereby a building should be erected from the proceeds of
a loan obtained by the vendee, and out of the proceeds of
the same loan the vendor should receive the purchase
money of the lot. When one sells land to another and
places that other in possession, in the absence of any re-
strictive covenants there is always an implied license that
the vendee may make improvements on the land. The ex-
pression of direct authority to do so, independent of other
circumstances, would not charge the vendor's estate; but,
accepting the evidence already referred to, there was in this
case not merely an implied or expressed permission to con-
struct the building, but a distinct arrangement between the
parties that the building should be constructed, and this, so
far as the vendor was concerned, was for the purpose of
obtaining funds out of which he should be paid for the
land. While the case is near the border line, we think these
facts were sufficient to sustain the trial court in finding that
the vendor had established the vendee as his agent in the
building operations sufficiently to charge the vendor's es-
tate with the burden of mechanics' liens arising out of such
construction. Indeed, the case in this view would be closely
analogous to the case of *Millsap v. Ball, supra.* We con-
clude, therefore, that the court did not err in admitting
parol testimony as to this arrangement, and that its find-
ings are supported by the evidence.

Complaint is made because of the court's entering a per-
sonal judgment against the plaintiff on the claim of the
Pomeroy Coal Company. Upon this claim there is evi-
dence tending to show that the Pomeroy Coal Company
refused to extend credit to the vendee for certain materials

which he desired to purchase for the foundation of the building; that the vendor then went with the vendee to the agent of the coal company and told him to furnish the material as it was going upon his (the vendor's) land, and that "he would protect" the coal company for the material. Subsequently, and after the material was furnished, the vendor signed a written instrument whereby he agreed "to protect Pomeroy Coal Company in case they have to take a lien for stone, lime, and sand sold to H. Fulton." It is claimed that this portion of the agreement was fraudulently inserted after it was signed by the vendor; but we think the evidence justified the trial court in finding that such was not the fact. Taking the plaintiff's evidence upon this point, it would appear that when he signed the agreement it was left incomplete, in order that the correct description of the property might be inserted, and that he signed some distance below the part already written, in order that this might be filled in. In view of the relations of the vendor to the contractors already referred to it is probable that in any view of the case 'the agreement to pay the Pomeroy Coal Company must be considered an independent and not a collateral promise. Still, viewed as a collateral promise, the memorandum satisfies the statute of frauds. It is said that there was no consideration for the written memorandum. The consideration for the promise was the original sale and delivery of the material; and it is too well established to justify us in referring to authorities that the statute of frauds relates only to the form of evidence, and a writing made after the transaction, if otherwise sufficient, renders such promise enforceable, although no new consideration passes.

JUDGMENT AFFIRMED.