PLATNER LUMBER COMPANY, APPELLANT, V. KRUG PARK AMUSEMENT COMPANY ET AL., APPELLEES: CASSEL REALTY COMPANY, APPELLEE.

FILED DECEMBER 18, 1936. No. 29689.

*Frost, Hammes & Nimtz* and *Adams, Wolff & Travis,* for appellant.

*Ziegler, Dunn & Becker, McGan & Burbridge, Robertson & Robertson, Troyer & Pardee, Shotwell & Vance, E. D. Gerye, W. R. King* and *William W. Graham, contra.*

Heard before GOSS, C. J., ROSE, EBERLY, DAY, PAINE and CARTER, JJ., and CHAPPELL, District Judge.

DAY, J.

The Platner Lumber Company brought this suit to foreclose a mechanic's lien on the property known as Krug Park located in Omaha. One defendant was the Krug Park Amusement Company, the lessee and operator of the amusement park. Another defendant was the Cassel Realty Company, the owner of the fee title to the real estate. The lien was asserted by virtue of a contract

between the plaintiff and the defendant Krug Park Amusement Company for material for the construction of a bathhouse. There were several interveners who also furnished material and labor for the construction of the same building. The plaintiff sought to extend the lien to cover the fee owned by the Cassel Realty Company. The trial court found in substance that the plaintiff and interveners had established their rights to liens for certain amounts against the leashold estate of the Krug Park Amusement Company. The trial court found that the lienors were not entitled to a lien against the fee. There are other phases of the decree which will be noted later, but this is sufficient for a discussion of the first question for our consideration.

The real estate involved consists of about 20 acres known as Krug Park, equipped as an amusement park and owned in fee simple by the Cassel Realty Company, a corporation organized in 1903. In January, 1917, the Cassel Realty Company leased Krug Park to Ingersoll for a term of 10 years with an option to extend the lease for another 10 years. Ingersoll organized the Krug Park Amusement Company and assigned his lease to it. In 1927 the lessee exercised its option and extended its lease until December 31, 1937. In 1932, the Krug Park Amusement Company issued and sold bonds, and to secure them executed a trust deed to the First National Company as trustee. A provision of this trust deed was that the Krug Park Amusement Company should keep the property insured against fire by a policy with a provision that the loss should be payable to the trustee according to its interest. In September, 1932, the bathhouse, a feature of the park, was destroyed by fire. The rebuilding of the bathhouse caused this controversy.

The Krug Park Amusement Company proceeded to rebuild the bathhouse by contracting for labor and materials. The Platner Lumber Company furnished materials, and the interveners furnished materials and labor for the construction of the building as follows: Platner Lumber Com-

pany, $4,079.71; Dudley Hamilton Company, $1,214.98; Johnson Hardware Company, $116.39; Giant Manufacturing Company, $338.59; Carlson & Hendershot, $1,005.00; G. H. Nelson Paint Company, $639.26; Ralph N. Perkins, $175.09; William J. Peterson, $308.08.

The trial court decreed a lien for the above amounts against the leasehold estate but denied the lien against the fee. The Platner Lumber Company has appealed from the judgment, and the Dudley Hamilton Company has filed a brief in this court. The Krug Park Amusement Company as a tenant had no authority to encumber the land for improvements. *Waterman v. Stout,* 38 Neb. 396, 56 N. W. 987. A tenant cannot without the authority of the landlord charge the land with a lien for materials for constructing a building thereon. *Stevens v. Burnham,* 62 Neb. 672, 87 N. W. 546; *Cross & Johnston v. Eyerley,* 86 Neb. 516, 125 N. W. 1085. The law relating to mechanics' liens requires a contract between the owner or his agent and the one who seeks to enforce a lien for labor or material for the improvements on the land. It is not claimed that there was any contract between the Platner Lumber Company or any intervener and the Cassel Realty Company, the owner of the fee.

The Krug Park Amusement Company was not the authorized agent of the landlord, the Cassel Realty Company, in the construction of the bathhouse. It seems to be the argument of the appellant in this case that the Krug Park Amusement Company was in fact the agent of the owner of the fee. At least it is argued that the Cassel Realty Company had knowledge of and consented that the improvement be made. After the fire the Krug Park Amusement Company consulted the trustee for the bondholders and requested that the insurance money on the bathhouse be used for replacing the property. The trustee consented by a letter dated October 8, 1932. There was some difficulty about the payment of insurance, and on January 14, 1933, the trustee wrote another letter qualifying the former one in which it stated that it had not yet received any insurance

and that it would only consent to the insurance money's being used for the replacement if approved by the Krug Park Amusement Company, Cassel Realty Company, and any other parties claiming any interest in the money. Thereafter, in an attempt to meet the conditions laid down in this later letter, a letter was written to the trustee consenting to the insurance money's being used for this purpose which was signed by the Krug Park Amusement Company, the Park Bathing Company, and the Cassel Realty Company. This letter is sufficiently definite and certain that it cannot be said to have been anything except a consent by the Cassel Realty Company that the proceeds of the fire insurance policies on the bathhouse might be paid for replacing the bathhouse. It was not sufficient to create the Krug Park Amusement Company an agent to contract on behalf of the owner for the construction of the improvement. The Cassel Realty Company had no interest in or claim to the insurance money.

There is another circumstance that materially aids in our conclusion that there was no such agency, and that is the fact that appellant, Platner Lumber Company, did not furnish the material on the credit of the Cassel Realty Company, or look to them for payment of their claim. The Platner Lumber Company had been dealing with the Krug Park Amusement Company before this transaction. They had an unpaid and delinquent claim for material furnished for other purposes at the time. They knew and understood that the Krug Park Amusement Company was the lessee of the property. The mechanic's lien which was filed and later the petition which was filed in this foreclosure case recites that the Krug Park Amusement Company had a leasehold interest in the premises. The appellant, Platner Lumber Company, did not rely upon the Cassel Realty Company for payment. The trustee for the bondholders paid for the material furnished so far as the insurance money was received. However, the insurance company refused payment on some of the policies amounting to $7,500, and as a result the Krug Park

Amusement Company was unable to pay its obligations to the plaintiff and the interveners; so that during the time the material was being furnished, the Platner Lumber Company was not satisfied to furnish the material under the circumstances on credit. Therefore, the Platner Lumber Company took the matter up, not with the Cassel Realty Company, but with the Krug Park Amusement Company and required additional security for their account. The additional security which they demanded was: (1) A power of attorney dated March 30, 1933, empowering it to take over possession of the park premises and the park receipts; (2) the assignment by the Krug Park Amusement Company of its claim for $2,500 on an insurance policy issued by the New York Underwriters Insurance Company, the assignment of a similar claim against the New Brunswick Fire Insurance Company, and the assignment of a third similar claim against the Great American Insurance Company, all executed May 31, 1933; (3) the addition of a penalty of 25 per cent. to the cash price for lumber if the lumber was not paid for by a certain date; and $1,500 worth of Krug Park Amusement Company bonds as additional collateral. With this additional security the Platner Lumber Company furnished the lumber. The record does not reveal that the Cassel Realty Company did anything in connection with this transaction. The party who makes the contract with the one furnishing the labor and materials is to be regarded as owner within the meaning of the statute only to the extent of the interest which he owns. That interest can be subjected to the lien just as the trial court decreed in this case. The lease in this case contained an express stipulation that no mechanic's lien was to attach to the lessor's interest, and, while this lease was not recorded, the appellant had actual knowledge that there was a lease. It did not see fit to investigate the terms of the lease. The lease was an accepted fact, and the conduct of the appellant indicates that it did not furnish the material expecting the Cassel Realty Company to pay.

The lease between the Krug Park Amusement Company and the Cassel Realty Company required the payment of approximately $10,000 a year rental. The lease required the Krug Park Amusement Company to pay the taxes on the land, to use the premises as an amusement park, and provided that no contract, mortgage, judgment, or mechanic's lien or other liens resulting from any act or omission of the lessee should in any manner affect the title or interest of the Cassel Realty Company.

On October 1, 1931, the Krug Park Amusement Company failed to pay the $1,625 rent due. By April 1, 1932, the past-due rental amounted to $4,875. On June 13, 1932, at the opening of the amusement season, $2,000 was paid on the rental account. Rentals then past due and unpaid amounted to $2,875. On July 1, 1932, the past-due rentals increased to $4,500. During the summer at different times sums aggregating $1,041.66 were paid, leaving the past-due rentals amounting to $3,458.34 which was the amount past due when the bathhouse was destroyed in September, 1932. The rentals were not paid regularly and reached the total of $10,083.34 on the first of April, 1933. Some payments were made thereafter, but in September, 1933, the amount past due on the rental account was approximately $10,000. This recital of the condition of the rental account is made for the purpose of showing that the rent was not paid regularly and when due from October, 1931, to September, 1933. During this time the materials and labor were furnished by the appellant and the interveners for the construction of the bathhouse under a contract with the tenant.

The only intervener which has filed its brief as a cross-appellant is Dudley Hamilton Company. Its answer and cross-petition allege that in accordance with its contract with the Krug Park Amusement Company it furnished certain labor and material for the construction of the bathhouse; that the material was furnished and the labor performed at the instance of and with the consent, approval, and knowledge of, and on the authorization and for the

benefit of the Cassel Realty Company, and that the Krug Park Amusement Company acted as the agent of the Cassel Realty Company in contracting for such materials and labors. The only distinction we can see between the claim of Dudley Hamilton Company and the Platner Lumber Company is that Dudley Hamilton Company alleged in its petition that the Krug Park Amusement Company was the agent of the Cassel Realty Company, and its lien which was filed prior thereto was filed against the Cassel Realty Company, and alleged a contract with the Cassel Realty Company. The evidence would not support a finding that Dudley Hamilton Company did in fact have a contract with the Cassel Realty Company for the construction of the bathhouse. The testimony of Mr. Dudley Hamilton would not justify a finding that there was any contract between Dudley Hamilton Company and the Cassel Realty Company.

The appellant contends that this case comes within the rule announced in *Harte v. Shukert*, 94 Neb. 210, 142 N. W. 517. The rule there is: "A landlord who, for several months, failed to exercise an option to declare the forfeiture of a long-term lease for nonpayment of past-due monthly rentals, while the tenant, with the knowledge and consent of the landlord, was making permanent improvements under his lease at a vast expense, may be estopped to exercise such option after the improvements have been completed." It is certain that this rule is applicable to the present case. In the present case the landlord had for a long period of time failed to exercise the option to declare a forfeiture of the lease for nonpayment of the past-due rentals, during which time the tenant was reconstructing the bathhouse which was burned. This was done with the landlord's knowledge and consent or at least without any objection on its part. While this improvement was being constructed the Cassel Realty Company waived its option to declare a forfeiture and is bound by the rule on the matter of estoppel. There the similarity between the *Shukert* case and the case at bar ends. In the appellant's brief it is argued that,

"where the district court finds that the landlord is so estopped, the leasehold estate merges in the fee and a decree of foreclosure of a mechanic's lien should be rendered against the fee." This contention is untenable. It does not necessarily follow that an estoppel against the landlord to exercise an option to forfeit the lease because the rent has not been paid causes a merger of the estates and an attachment of the lien to the fee. Such cannot be the fact when the evidence discloses, as in this case, that there has been no merger of the leasehold with the fee; that there has been no forfeiture; and that the estates remain separate and distinct, not only as a matter of fact, but because the landlord is estopped to exercise the option of forfeiture. The evidence relied upon by the appellant of a forfeiture is: First, that the landlord served a written notice upon the tenant to comply with the terms of the lease and prevent a forfeiture according to the terms of the lease; secondly, that the landlord filed a suit to quiet title against the mechanic's lien; and thirdly, that the landlord took possession of the property in the fall of 1933. It appears from an examination of the record that the provision of the lease required a ninety-days' notice before the landlord could exercise the option to forfeit the lease. The suit to quiet title was never tried, and at most the petition in the case could only be an admission against interest. It is adroitly argued that an allegation in the petition that the rent was in default in the sum due September 1, 1933, was an admission that a forfeiture had occurred at that date, or the allegation as to the amount of the default would have been larger. The petition was verified by one of the landlord's attorneys who, it appears, was not familiar with all the details. The original answer in this case of the Cassel Realty Company alleged that a forfeiture had taken place. An amended answer did not so allege. Regardless of allegations in pleadings, the Cassel Realty Company was estopped to exercise its option of forfeiture.

With respect to the landlord's taking possession, it appears that in the winter of 1933 the Krug Park Amuse-

ment Company had not paid the watchman. The Cassel Realty Company was interested in some of the buildings there and paid the watchman so that he would not abandon the premises. After the Krug Park Amusement Company went into bankruptcy, the Cassel Realty Company did not lease the premises, but agreed with a former officer of the Krug Park Amusement Company that, if he could run the park by an arrangement with the Krug Park Amusement Company or any one interested through it, it would not disturb his possession if he paid the sum of $50 a day. But they refused to insure his possession as against the lessee or any one claiming through or under it.

The facts in the case at bar and the *Shukert* case are distinguishable because in that case the landlord illegally took possession and appropriated the leasehold interest, including the expensive improvements erected by the lessee, to his own use and benefit, to the exclusion of a lienholder.

While it is not the duty of the landlord to release, nevertheless he may do so to mitigate damages, and yet there will be no forfeiture of the original lease necessarily arising from the fact. *Merrill v. Willis*, 51 Neb. 162, 70 N. W. 914. In the recent Nebraska case, *Johnston v. Jackson*, 129 Neb. 545, 262 N. W. 19, it was held that, where a lessee becomes bankrupt during the term of a lease, the landlord's acceptance of rent from the trustee and his tenants for several months and unsuccessful attempts to rent the premises do not amount to such interferences with lessee's possession as to indicate an intention of reentry so as to preclude recovery for the remaining period of the lease.

There is a very great divergence of opinion between the parties, not so much as to the evidence, but as to the conclusions to be drawn from certain evidence. To have set out the various contentions of the parties as to the conclusions to be drawn from the evidence would have extended this opinion to an unwarranted length. It is sufficient to say that the Cassel Realty Company had not exercised its option to forfeit the lease because the pay-

ments were delinquent, and that the leasehold and fee estates were not merged; that the Cassel Realty Company because of its neglect to exercise the option while the improvements were being made to the real estate was estopped to exercise said option; that the plaintiff and the interveners are entitled to liens upon the leasehold as provided by the decree of the district court upon the payment of the rental as provided in the decree.

AFFIRMED.