DEPARTMENT OF BANKING AND FINANCE OF THE STATE OF NEBRASKA, RECEIVER FOR COMMONWEALTH SAVINGS COMPANY, APPELLANT, V. CHARLES R. DAVIS ET AL., APPELLEES.

416 N.W.2d 566

Filed December 18, 1987.   No. 85-984.

William G. Blake of Pierson, Ackerman, Fitchett, Akin & Hunzeker, for appellant.

David A. Barron of Cline, Williams, Wright, Johnson & Oldfather, for appellee New York Guardian Mortgagee Corporation.

BOSLAUGH, WHITE, CAPORALE, SHANAHAN, and GRANT, JJ., and COLWELL, D.J., Retired.

COLWELL, D.J., Retired.

Plaintiff, as receiver for Commonwealth Savings Company (Commonwealth), brought this action to foreclose a 1976 real estate mortgage originally given by the defendants Charles R. Davis and Colleen Davis (Davises) to Nebraska Modular Homes, Inc. (Modular). Plaintiff claims the mortgage and secured note were assigned by Modular to Commonwealth as collateral security for a debt Modular owed to Commonwealth. The assignment was neither acknowledged nor properly recorded in the county records. In 1978, Davises refinanced the loan, paid Modular in full, and received a mortgage release from Modular. Modular did not remit the proceeds to Commonwealth. Plaintiff claims that defendants had notice of its mortgage claim. The trial court found for the defendants and dismissed plaintiff's amended petition. We affirm.

Plaintiff assigns nine separate errors that are consolidated as follows: (1) It was error to find that defendants had no notice that the Davis-Modular note and mortgage had been assigned to Commonwealth; (2) it was error to find that Modular, as Commonwealth's agent, was clothed with ostensible and apparent authority to collect full payment of the mortgage principal and interest and to release the mortgage; (3) it was error to find that the notice provisions of article 9 of the Nebraska Uniform Commercial Code, Neb. U.C.C. § 9-318(3) (Reissue 1980), controlled rather than the statutory recording acts, Neb. Rev. Stat. ch. 76, art. 2 (Reissue 1986); and (4) it was error to find that the Davis-Modular mortgage was not a first lien on the subject property.

"A real estate foreclosure action is an action in equity . . . ." *Travelers Indemnity Co. v. Heim*, 218 Neb. 326, 328, 352 N.W.2d 921, 923 (1984); *Tilden v. Beckmann*, 203 Neb. 293, 278 N.W.2d 581 (1979).

In an appeal of an equity action, the Supreme Court

tries factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court, provided, where credible evidence is in conflict on a material issue of fact, the Supreme Court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another.

*Hughes v. Enterprise Irrigation Dist.*, 226 Neb. 230, 234, 410 N.W.2d 494, 497 (1987).

In December of 1976, the Davises purchased a home from Modular. As consideration, on December 10, 1976, the Davises executed and delivered to Modular their promissory note for $32,687.25 and a real estate mortgage securing the debt. The principal and interest on the note were to be paid in monthly installments of $286.98.

Stamped on the back of both the note and the mortgage was the statement "Assignment with Recourse." It was executed by Kenneth L. Ferguson, vice president of Modular, on December 7, 1976, which was 3 days before the Davises signed the note and mortgage. The "Assignment with Recourse" statement was not acknowledged on either the note or the mortgage. These assignments to Commonwealth by Ferguson for Modular were given as collateral security for a $32,687.25 loan from Commonwealth to Modular.

At the time the Davises executed the note and mortgage to Modular, they had no knowledge of the endorsed assignment from Modular to Commonwealth. Ferguson said nothing about the assignment, and the copies of the note and mortgage given to the Davises did not contain the stamped assignment. The mortgage was recorded with the Fillmore County register of deeds; however, it was incorrectly indexed as a mortgage from the Davises to Commonwealth. No assignment was listed on the index.

From January of 1977 through April of 1978, the Davises made monthly principal and interest payments of $286.98 to Modular. Most of the checks were endorsed by Modular to the order of Commonwealth and then delivered to Commonwealth. During the time they were making payments to Modular, the Davises had no knowledge of the assignment of

the mortgage and of the Modular note to Commonwealth. Commonwealth made no attempt to notify the Davises of the assignment until January 1980, when it discovered payments were not being received and the subject mortgage had been released by Modular. Commonwealth had received only four loan payments from Modular between May 1978 and September 1979.

In May 1978, the Davises obtained a VA loan from Western Securities Company (Western) to refinance the purchase of their home from Modular. In April of 1978, a title search was conducted by John Fahlberg, a licensed abstracter, which did not reveal any interest of Commonwealth in the subject property. The Davis-Western loan was closed on May 17, 1978. The Davises executed a note and a deed of trust to the property to Western. Western paid Modular $32,994.36, the balance due on the note and mortgage. Modular did not remit these funds to Commonwealth. The deed of trust was recorded and filed with the register of deeds on May 30, 1978. Also filed and recorded on May 30, 1978, was a release of mortgage, executed May 5, releasing a prior 1969 mortgage given by the Davises to Gartner Mobile Housing, Inc., on the subject property.

On September 12, 1978, Ferguson, on behalf of Modular, executed a release of the December 10, 1976, Modular mortgage given by the Davises. The release was recorded and filed with the register of deeds on October 2, 1978. On that same date, another release was filed which purported to release the same 1969 Davis-Gartner mortgage that had been released on May 5, 1978. The second release was notarized by S.E. Copple, then president of Commonwealth.

On January 30, 1981, the Davis-Western note and the deed of trust were assigned to defendant New York Guardian Mortgagee Corporation (Guardian). The assignment was recorded with the register of deeds. The Davises thereafter made payments to Guardian.

Plaintiff declared the Modular loan to be in default sometime after November 1, 1983, when Commonwealth was placed in receivership. This suit followed.

## NOTICE

Plaintiff contends that the recorded assignment from

Modular to Commonwealth provided constructive notice to defendants. Section 76-241 provides: "All deeds, mortgages and other instruments of writing shall not be deemed lawfully recorded unless they have been previously acknowledged or proved in the manner prescribed by statute."

A deed is statutorily defined as follows:

> The term deed, as used in sections 76-201 to 76-281, shall be construed to embrace every instrument in writing by which any real estate or interest therein is created, aliened, mortgaged or assigned, or by which the title to any real estate may be affected in law or equity, except last wills and leases for one year or for a less time.

§ 76-203.

"The grantor must acknowledge the instrument to be his voluntary act and deed." § 76-216 (Reissue 1976). Neb. Rev. Stat. § 64-205 (Reissue 1986) sets forth the statutory definition for acknowledgment of an instrument. The definition requires:

> (1) That the person acknowledging appeared before the person taking the acknowledgment,
>
> (2) That he acknowledged he executed the instrument,
>
> (3) That, in the case of:
>
> (i) A natural person, he executed the instrument for the purposes therein stated;
>
> . . . .
>
> (4) That the person taking the acknowledgment either knew or had satisfactory evidence that the person acknowledging was the person named in the instrument or certificate.

After applying the foregoing statutory requirements to the facts, it is apparent that the endorsement on the mortgage did not qualify for recording; therefore, there was no constructive notice. Further, the register of deeds' error in indexing Commonwealth as the mortgagee did not provide such notice.

From the record, there is no other evidence that establishes that either Davises, Midwest, or Guardian had notice of the purported assignment and Commonwealth's claims thereunder. At most, there was evidence that the Davises' checks were endorsed by Modular as payee to the order of Commonwealth, which, standing alone, does not rise to notice of an assignment

of a mortgage.

## AGENCY

" 'Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.' " *Reeves v. Associates Financial Services Co., Inc.*, 197 Neb. 107, 114, 247 N.W.2d 434, 438 (1976).

"An undisclosed principal is ordinarily bound by contracts made on his account by an agent acting within his authority." *Mintken v. Nebraska Surety Co.*, 187 Neb. 215, 216, 188 N.W.2d 819, 820 (1971).

> As a general rule, one who contracts with the agent of an undisclosed principal, supposing that the agent is the real party in interest, and not being chargeable with notice of the existence of the principal, is entitled, if sued by the principal on the contract, to set up any defenses and equities which he could have set up against the agent had the latter been in reality the principal suing on his own behalf. Various reasons have been assigned for this rule, such as the estoppel of the undisclosed principal . . . .

3 Am. Jur. 2d *Agency* § 341 at 848-49 (1986). See, also, *Cheshire Provident Institution v. Feusner*, 63 Neb. 682, 88 N.W. 849 (1902). This court defines apparent authority as follows:

> Apparent authority is the power which enables a person to affect the legal relations of another with third persons, professedly as agent for the other, from and in accordance with the other's manifestation to such third persons. A party who has knowingly permitted others to treat one as his agent is estopped to deny the agency.

*Ryder Truck Rental v. Transportation Equip. Co.*, 215 Neb. 458, 461, 339 N.W.2d 283, 286 (1983). See, also, *Draemel v. Rufenacht, Bromagen & Hertz, Inc.*, 223 Neb. 645, 392 N.W.2d 759 (1986).

"Apparent or ostensible authority to act as an agent may be conferred if the alleged principal affirmatively, intentionally, or by lack of ordinary care causes third persons to act upon the apparent agency." *Wolfson Car Leasing Co., Inc. v. Weberg,*

200 Neb. 420, 427, 264 N.W.2d 178, 182 (1978).

"Apparent authority is such authority as the agent seems to have by reason of the authority he actually has. . . . A principal is bound by, and liable for, the acts which an agent does within his or her actual or apparent authority." *Mueller v. Union Pacific Railroad*, 220 Neb. 742, 752, 371 N.W.2d 732, 739 (1985).

From the onset, Commonwealth was an undisclosed principal that granted to Modular the apparent authority to act as its agent. The authority granted to Modular required Modular to act in a dual capacity as Commonwealth's agent. First, Modular was allowed to represent itself as mortgagee with full ownership of the mortgage and the secured debt and full authority to service the debt. Second, Modular acted in fact as Commonwealth's agent in servicing the debt. The service involved allowing Modular to collect the monthly installments of principal and interest and then to forward the payments to Commonwealth. Additionally, in servicing the debt, Modular was allowed to collect on the debt in full and then release the debt. In the absence of notice, this same agency situation continued up to and including the time that Davises refinanced the loan through Western. Commonwealth was satisfied with this arrangement and made no effort to protect itself until after plaintiff receiver was appointed, when it was discovered that Modular had violated its trust as its agent. Commonwealth could have asserted its claim at any time prior to the Davis-Western refinancing by advising Davises concerning its assignment. Commonwealth did nothing.

The facts in *Rehmeyer v. Lysinger*, 109 Neb. 805, 192 N.W. 337 (1923), are very similar to this case. In *Rehmeyer*, the court said at 812, 192 N.W. at 339: "[W]here one of two innocent persons must suffer loss he whose negligence caused the injury must bear it . . . ."

By its acts, omissions, and negligence, Commonwealth permitted Modular to represent to defendants and all persons that Modular was the sole owner of the Modular mortgage and secured note, with the apparent authority to service that loan, including receiving full payment and releasing the mortgage. Plaintiff is estopped from asserting its mortgage as a first lien

on the real estate against the interests of the defendants.

It is not necessary to discuss the other assigned errors. The trial court's decision to dismiss the petition was correct.

AFFIRMED.

HASTINGS, C.J., not participating.