LANDMARK ENTERPRISES, INC., A NEBRASKA CORPORATION,
APPELLANT, V. M.I. HARRISBURG ASSOCIATES, A NEBRASKA
PARTNERSHIP, ET AL., APPELLEES.
554 N.W.2d 119

Filed October 4, 1996.   No. S-94-886.

William P. Jones and Hugh I. Abrahamson for appellant.

Irving B. Epstein, of Epstein & Epstein, for appellee M.I. Harrisburg Associates.

WHITE, C.J., CAPORALE, FAHRNBRUCH, WRIGHT, CONNOLLY, and GERRARD, JJ.

CAPORALE, J.

## I. STATEMENT OF CASE

The plaintiff-appellant, Landmark Enterprises, Inc., a Nebraska corporation, challenged in the Nebraska Court of Appeals the district court's dismissal of this action to foreclose the construction lien Landmark filed against premises owned by the defendant-appellee M.I. Harrisburg Associates, a Nebraska partnership. In doing so, Landmark asserted, in summary, that the district court erred in finding (1) when the defendant-appellee lessee, Darren Owen, doing business as Catch 22, defaulted on his lease payments; (2) that there was no contract between Landmark and Harrisburg; (3) that Harrisburg did not benefit from Landmark's work; and (4) that the termination of Owen's leasehold interest did not merge his leasehold interest and attendant lien into Harrisburg's fee simple title such as to make the lien enforceable against Harrisburg's interest. On our own motion, we, under our authority to regulate the caseloads of the two courts, removed the matter to this court. We now affirm.

## II. SCOPE OF REVIEW

An action to foreclose a construction lien is one grounded in equity. *Franksen v. Crossroads Joint Venture*, 245 Neb. 863, 515 N.W.2d 794 (1994); *Hulinsky v. Parriott*, 232 Neb. 670, 441 N.W.2d 883 (1989). In an appeal of an equity action, an appellate court tries factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court, provided that where credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Gustin v. Scheele, ante* p. 269, 549 N.W.2d 135 (1996); *Mackiewicz v. J.J. & Associates*, 245 Neb. 568, 514 N.W.2d 613 (1994).

## III. FACTS

In consideration of rental payments of $3,100 per month, Harrisburg leased certain space in the subject premises to Owen for a term beginning May 1, 1991, and ending July 31, 1994, for the latter's use as a cocktail lounge. At the time the lease was executed, the space was unimproved and thus not equipped for such an operation. The lease imposed upon Owen the sole responsibility to pay for improvements or alterations. The lease also provided that Owen was to "give sufficient security that the [p]remises will be completed free and clear of liens" and required Owen to obtain written consent from Harrisburg prior to undertaking any improvements.

Owen entered into a verbal agreement with Landmark whereby Landmark would make the necessary revisions for $62,380. Harrisburg was not a party to this agreement and did not make any promise to pay Landmark. During construction, Owen authorized changes in the amount of $11,285, making the total price for the project $73,665.

The only contact between Harrisburg and Landmark during construction was through Harrisburg's real estate agent, John Bilby. Landmark also had contact with one Williams. Although Steve Faller, Landmark's president, assumed that Williams worked for Harrisburg, no evidence exists as to Williams' relationship to Harrisburg, if any. In any event,

Bilby and Williams merely asked questions to "see how the construction was coming."

Sometime after construction was completed, Owen became delinquent in his lease payments and also failed to pay Landmark the remaining $11,285 Landmark claimed to be due. Landmark filed a construction lien and claims to have mailed a copy to Harrisburg's business address. Harrisburg, however, asserts it was unaware of the lien.

Upon becoming 3 or 4 months delinquent in his lease payments, Owen sold his business to the defendant-appellee Drinks, Inc., which had conducted the business under Owen's lease and liquor license for a short period. Owen then terminated his lease with Harrisburg, and at almost the same time, Harrisburg leased the subject space to Drinks, Inc., under a new lease agreement calling for rental payments of $2,600 per month.

In accordance with a provision of the lease between Harrisburg and Owen, by Harrisburg's election, the improvements Owen made reverted to Harrisburg when the lease was terminated. Harrisburg admitted that it was "[p]robably" a lot easier to relet the space to Drinks, Inc., because it was already prepared for use as a cocktail lounge. Part of Drinks, Inc.'s interest in Owen's business was the fact that improvements had already been made, so it could open for business without making any renovations.

## IV. ANALYSIS

### 1. LEASE DEFAULT

In the first summarized assignment of error, Landmark asserts that the district court wrongly determined when Owen defaulted in his lease payments. However, Landmark does not argue this issue in its briefs.

A claimed prejudicial error must not only be assigned, but must be discussed in the brief of the asserting party; an appellate court will not consider assignments of error which are not discussed in the brief. *McArthur v. Papio-Missouri River NRD, ante* p. 96, 547 N.W.2d 716 (1996); *Ford Motor Credit Co. v. All Ways, Inc.*, 249 Neb. 923, 546 N.W.2d 807 (1996); *Anderson/Couvillon v. Nebraska Dept. of Soc. Servs.*, 248

Neb. 651, 538 N.W.2d 732 (1995). As Landmark has failed to address this matter, we do not concern ourselves with it.

## 2. CONTRACTING PARTIES

In the second summarized assignment of error, Landmark claims that the district court mistakenly found that Harrisburg had no contract with Landmark. In this regard, Landmark urges not that there existed a direct agreement between Landmark and Harrisburg, but, rather, that a contract between them came into existence through Owen's actions as Harrisburg's agent.

An agency is a fiduciary relationship resulting from one person's manifested consent that another may act on behalf and subject to the control of the person manifesting such consent, and further resulting from another's consent to so act. *Franksen v. Crossroads Joint Venture*, 245 Neb. 863, 515 N.W.2d 794 (1994); *Gottsch v. Bank of Stapleton*, 235 Neb. 816, 458 N.W.2d 443 (1990). Whether an agency exists depends on the facts underlying the relationship of the parties irrespective of the words or terminology used by the parties to characterize or describe their relationship. *Franksen, supra*; *Delicious Foods Co. v. Millard Warehouse*, 244 Neb. 449, 507 N.W.2d 631 (1993).

A tenant cannot without the authority of the landlord charge the land with a lien for materials for constructing or improving a building thereon, and the tenant is not the landlord's agent for this purpose, even if the tenant has the landlord's consent. *Waite Lumber Co., Inc. v. Masid Bros., Inc.*, 189 Neb. 10, 200 N.W.2d 119 (1972); *Platner Lumber Co. v. Krug Park Amusement Co.*, 131 Neb. 831, 270 N.W. 473 (1936). Thus, the landlord-tenant relationship does not, in and of itself, create a principal-agent relationship, even if the tenant has permission to improve the property. Clearly, there was here no actual authority for Owen to act on Harrisburg's behalf.

Neither was there any apparent or ostensible authority for Owen to act as an agent of Harrisburg. Such authority may be conferred if the alleged principal affirmatively, intentionally, or by lack of ordinary care causes third persons to act upon

the apparent authority. *Franksen, supra*; *Corman v. Musselman*, 232 Neb. 159, 439 N.W.2d 781 (1989). A party who has knowingly permitted others to treat one as his or her agent is estopped to deny the agency. *Western Fertilizer v. BRG*, 228 Neb. 776, 424 N.W.2d 588 (1988); *Department of Banking v. Davis*, 227 Neb. 172, 416 N.W.2d 566 (1987). However, the apparent authority or agency for which a principal may be liable must be traceable to the principal and cannot be established by the acts, declaration, or conduct of the agent. *Franksen, supra*; *Corman, supra*.

Landmark's reliance on *Sheehy v. Fulton*, 38 Neb. 691, 57 N.W. 395 (1894), and *Guiou v. Ryckman*, 77 Neb. 833, 110 N.W. 759 (1906), for the proposition that Owen was Harrisburg's agent are inapplicable. The *Sheehy* vendor conveyed land to the vendee for a certain sum in cash, the remainder to be paid in 37 days, with the understanding that the vendee would erect a building on the land. The vendor retained a mortgage on the property. The remainder of the purchase price was to be paid from the proceeds of a loan which could not be made until the excavations of the building were made and the foundations were in. The vendee defaulted, whereupon the vendor sued to foreclose his lien for the purchase money, and a number of liens for services and supplies were asserted. The evidence established that the vendor endeavored to have the vendee change contractors because those already hired were working too slowly, and there was evidence that the vendor exercised control over the construction. Furthermore, when a supplier had refused to extend credit to the vendee for building materials, the vendor accompanied the vendee to the supplier and said that " 'he would protect' " the supplier. 38 Neb. at 697, 57 N.W. at 397. The *Sheehy* commissioners concluded that although a "border line" case, *id.* at 696, 57 N.W. at 396, the vendor had established the vendee as the vendor's agent in the building operations sufficiently to charge the vendor's fee estate with the burden of the mechanics' liens arising out of the construction.

In *Guiou*, the legal titleholder vendor entered into a contract to convey two lots to the vendee, with an express provision that the vendee erect houses on each of the lots. The ven-

dor also agreed to take a second mortgage on both the houses and lots if the vendee were unable to secure a loan sufficient to erect the buildings. In holding the vendor liable for the liens filed by the suppliers and laborers, the *Guiou* commissioners wrote that

> where the vendor and vendee cooperate together in plans for the erection of improvements upon real estate covered by their agreement, the interest of the vendor, as well as that of the vendee, is bound for the payment of liens for labor and material which have been furnished for such improvements.

77 Neb. at 837, 110 N.W. at 760.

While it is true that some similarities exist between the present case and the facts in *Sheehy,* the cases are nonetheless distinguishable. While in the present case the lease required Owen to obtain written consent from Harrisburg prior to making any renovations and provided that Harrisburg could require that its own employees perform the work and that Harrisburg could supervise the renovations, none of these lease terms were implemented, and there is no evidence that Landmark knew and relied upon those provisions. Neither did Harrisburg exercise any control over the construction. Bilby's visit to the construction site and occasional questions did not constitute the exercise of control over the construction. Moreover, both Harrisburg and Owen understood that renovations would be necessary to operate a cocktail lounge, and unlike the situation in *Sheehy*, Harrisburg never guaranteed payment to Landmark.

*Guiou* is also distinguishable. Not only does the instant case not involve a vendor and vendee, the *Guiou* contract concerned not only the sale of land, but required that the vendee construct two homes. Furthermore, unlike the situation in *Guiou*, here Harrisburg did not agree to provide funding for the construction. The contract in the instant case is merely a lease of property for a limited purpose. It is only because of the condition of the property that Owen was required to make renovations.

In short, Harrisburg did nothing to cause Landmark to believe that Owen was an agent of Harrisburg. Thus, the evidence does not establish that Harrisburg caused Landmark to

believe that Owen had any authority to act on Harrisburg's behalf and does not establish that Owen was Harrisburg's agent.

### 3. BENEFIT TO HARRISBURG

The third summarized assignment of error avers that the district court wrongly found that Harrisburg did not benefit from the work done by Landmark. However, contrary to that assertion, the district court made no such finding. The district court merely noted Landmark's position that its work benefited Harrisburg by permitting it to immediately relet the space for the same use, albeit at a lesser monthly rental.

### 4. MERGER OF LIEN INTO FEE TITLE

That brings us to the fourth, last, and dispositive summarized assignment of error, that the district court erred in finding that a merger had not taken place. In this connection, Landmark asserts that under the equitable doctrine of merger, the termination of Owen's leasehold estate caused that estate and the attendant construction lien to merge into Harrisburg's fee simple estate, thereby making the construction lien enforceable against Harrisburg's interest in the property.

Although a mechanic's lien when filed attaches only to an equitable estate, it may be enforced against the fee after the equitable and legal titles have merged. *Franksen v. Crossroads Joint Venture*, 245 Neb. 863, 515 N.W.2d 794 (1994); *Waite Lumber Co., Inc. v. Masid Bros., Inc.*, 189 Neb. 10, 200 N.W.2d 119 (1972); *Central Construction Co. v. Highsmith*, 155 Neb. 113, 50 N.W.2d 817 (1952). The general rule is that where two unequal estates vest in the same person at the same time without an intervening estate, the smaller is thereupon merged into the greater. *Franksen, supra*; *Waite Lumber Co., Inc., supra*; *Central Construction Co., supra*.

But the doctrine of merger is not favored, and equity "will prevent or permit a merger as will best subserve the purposes of justice and the actual and just intent of the parties, whether express or implied." *Franksen*, 245 Neb. at 873, 515 N.W.2d at 802, citing *Waite Lumber Co., Inc., supra*, and *American Savings & Loan Ass'n v. Barry*, 123 Neb. 523, 243 N.W. 628 (1932). As a consequence, merger does not always or neces-

sarily result from a coinciding of two unequal estates. *Central Construction Co., supra.*

We have held that in determining whether a merger has taken place, a court is to consider the circumstances of the particular case in the light of equity and good conscience. *Franksen, supra; Waite Lumber Co., Inc., supra; American Savings & Loan Ass'n, supra.* In *Harte v. Shukert,* 94 Neb. 210, 142 N.W. 517 (1913), Shukert had leased a building to Hanson. Under the terms of the lease, any improvements made to the building by the lessee would revert to the owner upon expiration of the lease. Hanson hired Harte to undertake extensive expenditures to improve the building. Harte billed Hanson for $42,628.19, $27,515.11 of which Hanson paid. While the improvements were being made, Hanson did not pay rent becoming due; but Shukert did not exercise his option to cancel· the lease, nor did he try to collect payment according to the terms of the lease. Shukert also allowed the improvements to continue after Hanson was in default for 2 months of rent. We ruled that under the circumstances, Shukert was estopped from declaring a forfeiture, and that by assuming to forfeit the lease and taking possession of the building, he failed to keep the fee and the leasehold estates separate; therefore, the lien merged with the fee.

In *Platner Lumber Co. v. Krug Park Amusement Co.,* 131 Neb. 831, 270 N.W. 473 (1936), the fee owner failed to exercise his option to declare a forfeiture of the lease for nonpayment of the past-due rent while the lessee operator of an amusement park continued to make improvements to the property which were known to the fee owner. When the lessee went into bankruptcy, the fee owner allowed a former officer of the lessee to run the park, but refused to insure his possession as against the lessee or anyone else. We concluded that although the fee owner was estopped from declaring a forfeiture, it did not necessarily follow that the estoppel caused a merger of the estates and an attachment of the lien to the fee, and held that no such merger had taken place. The main distinguishing fact between *Platner* and *Shukert* is that the landlord in *Shukert* "took possession and appropriated the leasehold interest, including the expensive improvements erected by the lessee, to

his own use and benefit, to the exclusion of a lienholder." *Platner Lumber Co.*, 131 Neb. at 839, 270 N.W. at 477. In *Platner Lumber Co.*, the fee owner did not take possession of the premises, but, rather, merely allowed a former agent of the lessee to run the amusement park on the property.

In *Central Construction Co., supra,* the owner of the property sold to Highsmith. Highsmith mortgaged it to the Bilbys, and a mechanic's lien was placed on Highsmith's equitable interest. The owner then sold its legal title to Ehlers. Highsmith also sold his equitable interest to Ehlers. In addition, Ehlers paid for the release of the Bilbys' mortgage. Finding those facts to have established a clear intention on Ehlers' part to acquire all the titles, we concluded that the equities required a merger of the owner's legal title and Highsmith's equitable interest and, as a consequence, held that the mechanic's lien became a lien on Ehlers' fee title. But *Central Construction Co.* too is distinguishable from the instant case. Here, Harrisburg merely terminated the lease with Owen in order to lease the property to Drinks, Inc. The intent of the parties in the instant case was merely to allow Harrisburg to relet the property.

Finally, in *Waite Lumber Co., Inc. v. Masid Bros., Inc.*, 189 Neb. 10, 200 N.W.2d 119 (1972), Masid, the owner of the land involved, leased half a building to Verges to operate a restaurant for a 5-year term with an option to renew. The lease required that Verges undertake substantial remodeling at his own expense and that, on the termination of the lease, anything attached to the building remain a part thereof. Masid was responsible for getting utilities to the leased premises. Masid was familiar with all of the improvements required of Verges. All of the contractors working to improve the building dealt exclusively with Verges and had no contracts with Masid. Neither did Masid agree to be responsible for Verges' debts. However, although Verges was in default of rent during most of the construction period, Masid did not exercise its option to forfeit or cancel the lease. Rather, Masid stood by and let the material and labor suppliers continue on the job. In addition, Masid visited the construction site several times and spoke

with the general foreman about what portion of the improvements was Masid's responsibility.

After the restaurant opened, Verges suddenly abandoned the premises and Masid took immediate possession. Masid made some minor improvements to the property and then leased the building to another tenant 5 months after Verges left. Concluding that Masid clearly intended to foreclose Verges from any and all leasehold estate he had, we held that a merger resulted. In doing so, we noted that Masid now owned a building, half of which had been completely changed into a restaurant and lounge at no cost to Masid, notwithstanding the lease called for a significant portion of the improvements to be made by Masid. Under those circumstances, we wrote that "[t]o allow Masid to so enrich itself at the expense of [the lienholders] would produce an unconscionable result, which equity will not permit." 189 Neb. at 20, 200 N.W.2d at 125.

But as noted earlier, in the instant case, Owen entered into a lease knowing that he was required to do substantial remodeling solely at his cost. At no time did Harrisburg enter into an agreement with Landmark or promise to pay Landmark for the work done. While in *Waite Lumber Co., Inc.*, the landlord was bound by the lease to pay for "a significant portion of the improvement," *id.* at 19, 200 N.W.2d at 125, here, it appears that Owen made his rent payments on time while the construction was taking place and did not become delinquent until after construction was completed. In *Harte v. Shukert*, 94 Neb. 210, 142 N.W. 517 (1913), and *Waite Lumber Co., Inc., supra*, the landowners allowed construction to continue although the tenant was in default of rent.

It is true that prior to the improvements Owen caused to be made, Harrisburg owned a partially unimproved building, and that space now contains $73,665 worth of improvements, for which Harrisburg paid nothing. It is also true that in determining that a merger should result in *Waite Lumber Co., Inc.*, we observed that Masid would not be permitted to be enriched at the lienholders' expense. However, the differences, as mentioned previously, are that while here, Harrisburg was under no duty to pay for any of the improvements, the owner in *Waite Lumber Co., Inc.*, was so obligated, and that while here,

Owen did not default until construction was completed, the *Waite Lumber Co., Inc.,* owner permitted construction to continue after he knew the tenant had defaulted.

While Harrisburg has been enriched at Owen's expense, the enrichment is not the result of any wrongdoing on Harrisburg's part. Simply put, Harrisburg's tenant hired a contractor and then failed to pay the contractor in full. All Harrisburg did was to lease unimproved space to a tenant who was willing to and negotiated a lease which obligated him to personally undertake the necessary improvements. Under these circumstances, equity does not require that the leasehold estate merge with Harrisburg's fee estate.

## V. JUDGMENT

Accordingly, the decree of the district court is affirmed.

AFFIRMED.

LANPHIER, J., participating on briefs.